JOSEPH KUSHNER *vs.* JOHN A. McGINNIS.

ANNA KUSHNER *vs.* SAME.

Suffolk.    January 4, 1935. — January 29, 1935.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Negligence,* Of proprietor of amusement device, Contractual limitation of liability, Invited person, Contributory.

At the hearing of an action of tort against the proprietor of an amusement device for personal injuries sustained by a woman patron, there was evidence that, before entering the device, the plaintiff purchased a ticket at a ticket booth four or five steps from the place where the ticket was collected; that the ticket was about two inches long and three quarters of an inch wide, with printing on its front, and on its back a statement: "The Management will not be responsible for injury to any one who goes through the device"; that the plaintiff was thirty-three years of age and a native of Russia; that, although she spoke English fairly well, she could not read and did not know what was on the ticket; that no other means were taken by the defendant to warn her or other patrons that his invitation to enter and use the device was not absolute but was limited to a use at the patron's risk; and that the plaintiff, while using the device, sustained injury due to negligence of the defendant's employees. *Held,* that

(1) A finding was warranted that the means employed by the defendant to warn the plaintiff that his invitation to use the device was limited and thus to exempt himself from liability for negligence in the operation thereof were not adequate and would not have been adequate even if the plaintiff had been able to read;

(2) Findings were warranted that the defendant owed the plaintiff the ordinary common law duty of care toward a person invited to use his premises for business purposes, and that the plaintiff did not assume the risk of injury resulting from such use.

There was further evidence at the hearing above described that the device was a chute, made of highly polished boards, down which patrons slid; that an attendant of the defendant was stationed at the top of the chute to assist patrons in taking the correct position for sliding and to furnish them with burlap bags on which to sit while sliding; that another attendant was stationed at the bottom of the chute to assist patrons in leaving it after sliding; that both attendants had been instructed to look out for the safety of patrons; that if patrons had been properly instructed at the top of the chute, they would arrive at the bottom slowly and sitting upright; that no such bag was furnished to the plaintiff; that, although she went down the chute flat on her back and at great speed, the attendant at the bottom made no attempt to

stop her; and that she was injured when she failed to stop at the bottom and struck with great force a mattress fastened against a wall there. *Held*, that

(1) The evidence warranted a finding of negligence on the part of the defendant toward the plaintiff;

(2) A finding was warranted that no negligence on the part of the plaintiff contributed to her injury;

(3) A finding for the plaintiff was warranted.

Two ACTIONS OF TORT. Writs dated August 8, 1929.

In the Superior Court, the actions were heard together by *Weed*, J., without a jury. Material evidence is described in the opinion. There were findings for the plaintiffs, respectively, in the sums of $137 and $1,500. The defendant alleged exceptions.

The case was submitted on briefs.

*J. N. Clark*, for the defendant.

*J. M. Russell & H. J. Levi*, for the plaintiffs.

QUA, J. These two actions of tort were tried together by a judge of the Superior Court without a jury. The two plaintiffs are husband and wife. The wife's action is to recover damages for personal injury to herself. The husband's action is to recover consequential damages for injury to his wife. For convenience the wife will be referred to as the plaintiff, unless otherwise indicated.

Findings by the trial judge establish the following facts: At the time of the accident the defendant was operating and in control of an amusement device known as the "Dragon Pit" at Revere Beach. "A patron upon admission entered a maze which led eventually to a different type of maze and then to some rooms with tilted floors, and finally to a narrow stairway leading to the top of a slide or chute. This chute was between three and four feet wide. The boards forming the chute or slide were kept highly polished like a dance hall floor. The slide was seventy-five to eighty feet long and the top landing was at an elevation of about twenty-one feet above the foot of the slide. The slide started down at an angle of about forty-five degrees for about forty feet to a height of about to one's knee above the floor and then there were two or more wave-like humps before the slide came gradually to the floor level

at the farther end. The slide was designed to bring people to the foot of the slide and not to come too fast. At the landing at the head of the stairs by which a patron approached the slide, the end of the slide was not in sight, the slider passing through a sort of tunnel for about thirty feet. The tunnel was lighted. At the wall at the foot of the slide a mattress similar to mattresses used in gymnasiums, eight or nine inches thick, was fastened against the wall across the end of the slide. An attendant was kept by the defendant on duty at the head of the slide to help patrons prepare to make the slide, and burlap bags were furnished, upon which patrons might sit in going down and in which they might insert their feet if they desired to protect stockings, dresses and shoes. On the farther side of the slide another stairway led down to the floor below by which patrons not wishing to take the slide might return to the street level and the exit, and by which boys employed to return the burlap bags reached the top landing. An attendant stood at the foot of the slide about six feet from the wall to assist patrons in leaving the slide and to retrieve the bags which were returned to the attendant at the top of the slide." The attendants were under oral instructions "to safeguard and protect the customers in using the slide so they would not get hurt; more specifically to put bags under each, to instruct them to sit up straight and keep their hands in their laps . . . ." The plaintiff, who was thirty-three years of age at the time of the accident, is a native of Russia. She speaks English fairly well. She is of medium height and heavy for her height. On the evening of the accident the plaintiff visited the "Dragon Pit" in company with two other women. They bought tickets at the entrance which admitted them "to all of the joys and wonders" of the Pit. On the plaintiff's ticket were printed the words "The Management will not be responsible for injury to any one who goes through the device (or devices)." The plaintiff could not read nor did she know what was printed on the ticket. "No other means was taken by the defendant to warn her or other patrons that his invitation to enter the Dragon's Pit and

to use the chute or slide was not absolute but limited to a use at the patron's risk." The plaintiff went down the slide, and was injured when she struck the mattress at the foot of the slide.

After finding for the defendant on several counts of the plaintiffs' declarations and on various contentions as to damages, none of which are material to the questions now involved in the cases, the judge found upon all the evidence that the defendant was negligent on the sole grounds that he failed to use reasonable care in so operating the chute or slide as to make it reasonably safe for use by the plaintiff in the way in which it was adapted for use and customarily used, and in failing to warn her of dangers in such use not apparent or readily ascertainable by her; that the evidence fell short of showing that the plaintiff's own negligence contributed to her injury or that she had assumed the risk or that the defendant's invitation to use the slide was limited to use at the plaintiff's own risk. He found for both plaintiffs. The questions argued and now before us are whether the findings for the plaintiffs were justified and whether there was error in the granting of the plaintiff's requests for rulings and in denying certain of the defendant's requests and whether certain exceptions of the defendant to "so much of" certain specified parts of the judge's findings "as constituted a ruling of law" should be sustained.

The bill of exceptions states that "In addition to the facts contained in the court's 'Findings'" other material evidence was presented at the trial. Some of this evidence tended to support the ultimate findings of the trial judge. The defendant testified that the attendant at the top of the slide was instructed to place bags underneath those who used the slide "so that they would not soil their clothes," and that he thought such a bag would normally tend somewhat to diminish the speed of the person sliding down. This attendant further testified that, assuming a person had been properly instructed at the top, he arrived at the canvas mattress sitting upright and with barely enough force to go into the canvas. There was evidence that this attendant placed no bag under the plaintiff and that she went down the slide

very fast and did not stop at the bottom, but struck the wall "very hard." The defendant testified that the attendant at the top of the slide was under instructions to look out, in a general way, for the safety and protection of customers; that it was left to the good judgment of the attendant to do whatever was necessary so to protect and safeguard the customers against injury; and that one of the reasons for having such an attendant was to see that the customers got started down the slide in the right way, sitting in or on the bag, with hands in their laps and sitting up straight in order to avoid soiling their clothes, and to avoid the possibility of friction burns. There was other evidence that it was the duty of this attendant to provide a bag for the patrons to sit on. The defendant further testified that one of his purposes in having an attendant at the bottom of the slide was to protect and safeguard the patrons. He could not recall whether he had instructed this attendant to stop patrons as they approached him, but this attendant sometimes would stop a patron though he usually allowed him to continue on to the mattress at the end of the slide. The plaintiff testified that this attendant did not try to stop her before she struck the mattress, although she came down flat on her back and was going very fast as she approached the attendant; that she struck the wall when in a lying down position "very hard," did not know anything for about a minute and then felt pain; and that she had never been in the Dragon Pit previous to the night of the accident, did not know there was any slide there until she came to it and then did not know that there were any stairs she could have gone down without using the slide. The attendant at the bottom of the slide testified that he made no attempt to stop the plaintiff. The judge so found and also found that he had not been instructed to stop patrons before they should strike the mattress on the wall at the foot of the slide. There was evidence that the tickets were about two inches long and three quarters of an inch wide, that there was printing on the front of the tickets and that the statement referred to by the judge in his findings as to the management not being responsible was printed on the back, and that the distance from the ticket booth to

the place where the tickets were collected and torn up was approximately four or five steps.

We think that the judge's subsidiary findings of fact (which are not now attacked) taken in connection with the evidence set forth in the bill of exceptions are sufficient to support his ultimate findings.

Conceding in the defendant's favor that he lawfully could have exempted himself from liability for negligence in the operation of the device which he invited the plaintiff to use, if he had employed adequate means to bring to her attention the fact that his invitation was a qualified and conditional one (see *Blanchette* v. *Union Street Railway*, 248 Mass. 407, 413) we think the judge could find that the means employed were not adequate and would not have been adequate even if the plaintiff had been able to read. Taking into account the facts that the only warning given was by means of printed matter on the back of a small ticket which was purchased at a booth only four or five steps from the place where it was to be collected and torn up, we think the judge was justified in finding not only that the plaintiff did not know what was printed on the ticket, but also that a person of average intelligence and alertness would be unlikely to observe it, and would enter the "Pit" in the belief that he had all the rights of the ordinary business visitor with respect to so much of the premises as he was invited to use. On this point the case is governed in principle by *Blanchette* v. *Union Street Railway*, 248 Mass. 407, at page 413. Nor can it be distinguished from those cases holding that where no question under the interstate commerce act is involved, a passenger on a railroad is not bound by such limitations of liability as it is within the power of a common carrier to impose, if they are not brought to the attention of the passenger in any other way than by being printed in an inconspicuous manner upon an ordinary ticket or check. *Brown* v. *Eastern Railroad*, 11 Cush. 97. *Malone* v. *Boston & Worcester Railroad*, 12 Gray, 388. *Hooker* v. *Boston & Maine Railroad*, 209 Mass. 598, 600, and cases cited.

The series of cases cited by the defendant, such as *Grace* v. *Adams*, 100 Mass. 505, and *Fonseca* v. *Cunard Steamship Co.*

153 Mass. 553, and more recent cases following them, are all distinguishable on the ground that in those cases the bill of lading or other instrument delivered to and accepted by the plaintiff was a true contract, all parts of which must be given effect, and not a mere token or check. The judge was justified in finding that the defendant owed the plaintiff the ordinary common law duty of care toward a person invited for business purposes and that the plaintiff did not assume the risk.

The judge was further warranted in finding that with no negligence on her part the plaintiff came down the slide with excessive speed and struck the mattress at the bottom so hard that she was substantially injured. He could have found that this was due to the negligence of the defendant's servant at the top of the slide in not providing the plaintiff with a bag and seeing that she was properly seated upon it, or to the negligence of the defendant's servant at the bottom of the slide in not stopping the plaintiff, or to both. We think he could also find that there was negligence in not warning the plaintiff that under the conditions under which she started down, excessive speed was possible. The case is distinguishable from *Sullivan* v. *Ridgway Construction Co.* 236 Mass. 75, where it was ruled that there was no evidence of negligence in the operation of the slide, that the plaintiff was familiar with all the conditions and that the injury was due to crowding.

The defendant's exceptions to the granting of the plaintiff's requests for rulings and to the refusal of certain of his own requests and to specified portions of the judge's findings, in so far as they have been argued, are either immaterial under the findings made or have been disposed of by what has already been said. No error is shown. In each case the entry must be

*Exceptions overruled.*