*Municipal Court of the City of Boston for Civil Business*

## JEAN O'NEIL, ADMINISTRATRIX

### v.

## AAACON AUTO TRANSPORT, INC.

Argued: June 2, 1972 - Decided: June 13, 1972

*Present:* Adlow, C.J., Gillen, J., Gorrasi, Sp.J.
Case tried to *Morrisey, J.*

**Adlow, C. J.** Action of contract or tort to recover for failure to transport and deliver the plaintiff's automobile from Los Angeles, California to Boston, Massachusetts. To the plaintiff's declaration, which alleged breach of

contract and negligence, the defendant relied on a proviso in an alleged bill of lading that any claim or controversy arising out of said agreement shall be submitted to arbitration in the State of New York. Subsequent to the filing of the pleadings a motion was made by the defendant alleging that on July 6, 1971 the Supreme Court of the State of New York entered a restraining order enjoining the plaintiff from proceeding against the defendant in this action, and on the basis oft his injunction the defendant moved to stay this action pending the arbitration proceedings in New York.

At the hearing on this motion there was offered in evidence a Freight Bill, a Bill of Lading, and two checks payable to the defendant. One check was in the amount of $100 dated December 20, 1968. The other was in the amount of $107, dated January 3, 1969. By the terms of the Freight Bill the car was to be picked up at 922 Harper Ave., Los Angeles, California. It was to be delivered to the defendant's quarters in Boston. The price for carriage of the car was to be $190. Of this $60 was to be paid as a deposit with the order and $130 on delivery of the car. Despite these terms it appears from the dates on the checks that $100 was paid as a deposit on December 20, 1968 and $117 was paid by check on January 3, 1969. The car never arrived in Boston. After a hearing the court stayed the proceedings, and being aggrieved thereby the plaintiff brings this report.

At the outset certain disparities in the documents render uncertain the exact terms on which the parties dealt with one another. While the Freight Bill recites that the price of carriage was $190 of which $60 was payable with the order, it also appears that the proviso for the $60 deposit was disregarded and a $100 deposit was paid instead. This would leave a balance on account of the contract of $90. However, the second check paid by the shipper was in the amount of $107, and it was paid on January 3, 1968 despite the fact that the Freight Bill provided for payment on delivery of the car. It is important to observe that the car owner reveals an amazing unfamiliarity with the terms of her contract, and appears to have been imposed upon by the defendant both with respect to the time of making payments and the amounts of the payments.

It is very apparent that the Bill of Lading was not made out at the time the Freight Bill was prepared or given to the car owner. From the documents in evidence it appears that the $100 check given as a deposit, was made out on December 20, 1968. Credit for this $100 check was noted on the Freight Bill and we must assume that the Freight Bill was executed on the same day. While the Freight Bill states that it is "Subject to the Terms and Conditions of the Carrier's Bill of Lading", it is apparent that no Bill of Lading was issued with the Freight Bill. The Bill of Lading is

dated January 2, 1969. It is apparent that the agreement between the plaintiff's intestate and the defendant is represented by the Freight Bill. This was made in Massachusetts, and, though it refers to a Bill of Lading, it is obvious that no Bill of Lading accompanied it when it was given to the car owner.

. The Bill of Lading, on the other hand, was made out in California, some two weeks after the contract was made. What adds to the confusion is that the Bill of Lading recites that the payment due at destination is $50. This obviously was wrong. The Bill of Lading was not given to the person who had made the original contract with the carrier. If it came into the possession of the plaintiff it came long after the original contract of carriage was made. On December 20, 1968, when the car owner delivered a deposit of $100 to the defendant to bind a bargain evidenced by the Freight Bill, there was a bare reference to a Bill of Lading in the document and nothing more. The question may well be asked "To what terms or conditions did the car owner subscribe other than those set forth in the Freight Bill?"

. In the determination of the issue raised we are concerned with the extent to which the rights of the parties are affected by the conditions printed in the body of the Bill of Lading, which first came into the situation on January 2, 1969 — (see the pertinent terms and condi-

tions in Bill of Lading in Appendix at end of opinion.)

■. One question is suggested at the outset. Were the conditions embraced in the Bill of Lading binding on the car owner who made a contract for the carriage of the automobile on December 20, 1968? In our opinion they were not. Keeping in mind the radical limitations on the car owner's rights embraced in these limitations, it is essential that the defendant show that they were brought to the attention of the car owner at the time of the making the contract. *O'Brien* v. *Freeman,* 299 Mass. 20, 22. While the courts recognize the right of carriers to make reasonable limitations on their liabilities, the enforcement of these rights has been predicated on the knowledge of these limitations or on the opportunity to obtain this knowledge by the car owner. *Brown* v. *Eastern Railroad Co.,* 11 Cush. 97, 99. *Kirshner* v. *McGinnis,* 289 Mass. 326, 331. *Brennan* v. *Ocean View Amusement Co.,* 289 Mass. 587, 597. In considering these questions we must keep in mind the general principles governing the formation of contracts. On the face of the Freight Bill appeared a simple arrangement whereby the defendant, a carrier, agreed to carry a car across the American continent for a fixed price. The deal was consummated. True, there was a reference to a Bill of Lading. But the term has no fixed meaning. There are a myriad of forms which answer to the description. Some are

commonplace; some unusual. If they were unusual, or unreasonable, or manifestly irrelevant, there was a duty on the carrier to give the party with whom it was contracting reasonable notice of same. *Hood* v. *Anchor Line* (1918) A.C. (Eng.) 837, 844. *Thompson* v. *L. M.S.R. Co.* (1930) 1 K.B. (Eng.) 41, 53. There is no evidence whatever to indicate that on December 20, 1968, when this contract was made, there was the slightest intimation to the car owner, who was negotiating with the defendant, that if she engaged the carrier the driver of her car would be an independent contractor for whose conduct the defendant would not be responsible, or that if by any chance there was any difficulty over the contract, the car owner would have to go to New York and submit to arbitration.

It is doubtful whether the car owner would have closed any bargain had she been advised that the Bonded and Insured Interstate Automobile Transporters, as the defendants are described in the Freight Bill, were not acting as principals but as agents for car jockeys for whose conduct they were not responsible. In our opinion the conditions which are embodied in this Bill of Lading deprived the auto owner of the essence of the agreement she sought to make. There is a decided policy against giving effect to such provisions, especially when they are not brought home to the person vitality concerned. They are in every sense unconscion-

able. *Lechmere Tire & Sales Co.* v. *Burwick,* 1972 A.S. 19, 21, note 3. G.L. c. 106, § 2-302.

We are satisfied that the car owner never knew, nor had the opportunity to know, of the unusual and one-sided provisions of the Bill of Lading.

■■■ While the law looks favorably on reasonable limitations which are made known to a party, *Gooch* v. *Oregon Short Line Ry. Co.,* 258 US 22, it frowns and denies validity to provisions which exonerate the carrier entirely from liability for negligence. *Murray* v. *Cunard Steamship Co.,* 235 N.Y. 162.

In this cause the evidence clearly indicates that at the time of the execution of this contract on December 20, 1968 the terms of the Bill of Lading were no part of the contract. We are also satisfied that when the Bill of Lading was introduced into the situation, though it appeared weeks after the execution of the contract, the car owner learned nothing whatever about the exculpatory terms on which the defendant now relies. For this reason she never was bound by them. *Sandler* v. *Commonwealth Station Co.,* 307 Mass. 470, 472. *Kergald* v. *Armstrong Trans. Co.,* 330 Mass. 254.

In view of the above considerations, we are compelled to rule that the provisions of the Bill of Lading have no binding effect on the plaintiff's right to bring this action. The court erred in staying the proceedings.

Order to stay reversed. **Cause To Stand For Trial.**

VINCENT E. PICHULO of Boston
   for the Plaintiff

DANIEL J. ORKIN of Boston
   for the Defendant

## APPENDIX A.

### PERTINENT PROVISIONS OF CONDITIONS IN BILL OF LADING.

Shipper agrees that driver is an independent contractor. ....All terms and conditions of the Uniform Straight Bill of Lading as published in the National Motor Freight Classification A-9 MF. ICC No. 9 supplements and reissue thereof, a copy of which is available to shipper and driver at the office of the carrier, are included herein by reference and made a part hereof. .... This Bill of Lading supersedes all prior written or oral representations of carrier and constitutes the entire agreement between the shipper and the carrier and shipper and driver and may not be changed except in writing signed by an officer of carrier. This Bill of Lading shall be deemed executed by the carrier at its principal office in New York City. Any claim or controversy arising out of or relating to this agreement, or the performance or breach thereof, shall be settled by arbitration in the City, County, and State of New York in accordance with the laws of the State of New York and the Rules of the American Arbitration Association.