Argued May 5, affirmed May 25, 1915.

## JOHNSON v. HOT SPRINGS LAND & IMP. CO.*

(148 Pac. 1137.)

Negligence — Swimming-pool — Injuries to Diver — Liability of Proprietor.

1. Although the proprietor of a swimming-pool is not an insurer of the safety of patrons, he is required to use reasonable care in furnishing reasonably safe conditions, and, if they are not reasonably safe, because of depth of water too slight to permit diving with safety, on failure to give notice of such condition and to warn patrons, the proprietor is liable for any resulting injury.

[As to duty to patrons of proprietor of bathing resort or beach, see note in Ann. Cas. 1913D, 1217.]

Negligence—Swimming-pool—Injuries to Diver—Contributory Negligence.

2. In an action by the administrator of one killed by diving and striking the bottom of a swimming-pool on account of the insufficient depth of water, where the deceased was a good diver, had been in the plunge previously when the water was at its usual and safe depth, where he was told upon inquiry that the water was only half the usual depth, and was shallow, but was coming in fast, where he waited for the tank to fill up, where he saw his friends standing in the pool, and so was able to judge the depth of the water for himself, and where it was apparent that he realized the danger of diving, he was guilty of contributory negligence.

---

*The authorities passing upon the liability of one maintaining a bathing resort for the safety of patrons are reviewed in the notes in 3 L. R. A. (N. S.) 982, 1132; 32 L. R. A. (N. S.) 715; 38 L. R. A. (N. S.) 72, and 42 L. R. A. (N. S.) 1073.        REPORTER.

From Baker: Gustav Anderson, Judge.

In Banc.    Statement by Mr. Justice Harris.

This is an action by Rasmus Johnson, administrator of the estate of Arthur Johnson, deceased against the Hot Springs Land & Improvement Company, a private corporation, for causing the death of plaintiff's intestate.

The defendant maintains a natatorium which is open to the public for swimming, diving and bathing for hire.    Arthur Johnson dived off a spring-board into the swimming-pool, struck his head on the bottom, was seriously injured, and thereafter died from the effects of the injury so received.    Charging that the defendant was guilty of negligence causing the injury and consequent death of Arthur Johnson, his administrator commenced this action to recover damages.

The complaint alleges, in substance, that the natatorium was held out to the public as a safe and suitable place for bathing, swimming and diving, and that a spring-board was maintained as an inducement to the patrons of the place to dive in the swimming-tank; that the water was less than four feet in depth, and was so shallow as to constitute a dangerous place for swimming and diving; that the agents of the defendant failed to warn Arthur Johnson that on account of the shallowness it was dangerous to dive into the water, but that, on the contrary, they told and assured him that the water was deep enough to dive in from the spring-board; that the deceased, at the time of the injury, was unfamiliar with the premises, and did not know the risk of diving; and that he relied upon the assurance of the defendant that the swimming-tank was a safe place in which to dive, and also upon the

fact that the defendant rented him a bathing suit and failed to warn him of any danger of diving.

After denying culpability, the answer alleges that the floor of the tank is on an inclined plane, so that, when the tank is filled, the depth of the water is graduated from about four feet in one end to about seven feet in the other end of the pool; that because of the quality of the water the bottom is distinctly visible even to a casual observer; that for sanitary reasons the tank is frequently emptied, cleaned and then refilled; and that the depth of the water was plainly apparent to the deceased. The answer further alleges that the defendant had posted signs in conspicuous places warning all persons that if they dived in the plunge they did so at their own risk; that Arthur Johnson had knowledge of such warning, and assumed the risk of diving from the spring-board; and that the injury was caused by the negligence of the deceased.

On motion of defendant, judgment of a nonsuit was given against the plaintiff, who then appealed.

AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. C. O. Hindman* and *Mr. William H. Packwood, Jr.*

For respondent there was a brief with oral arguments by *Mr. Joseph J. Heilner* and *Mr. William Smith.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The testimony will be recounted before attempting to determine the soundness of the ruling made by the trial court. The deceased was aged about 19 years

and 3 months on June 6, 1913, when injured. He had worked about 5 years in box factories, was of ordinary intelligence, could read English, was practically a grown man, was a good swimmer and diver, and had been in the plunge two and perhaps more times previous to the accident. Having gone to the natatorium, accompanied by three friends, Walter Murphy, Ray Peck and Louin Halvorsen, for the purpose of using the tank, Johnson and his companions rented bathing suits from an employee of the defendant, and at that time, one of the party having inquired about the depth of the water, they were told by the employee mentioned that the water was shallow, and was 3 to 3½ feet deep, but that it was coming in fast, and it would not be long until the tank was full. They were neither told that the pool was safe for diving nor warned that it was unsafe. The shallowness of the water being apparent, they sat around and waited "for the water to fill up." The spring-board extended about 5 or 5½ feet from the bank, was more than 2 feet above the surface of the water at the time of the injury, and was located at the deeper end of the pool about 80 or 90 feet distant from the place at the opposite end of the tank, where the defendant kept the bathing suits for rent, and in plain view of the employee in charge of the suits.

After waiting about 20 minutes, Johnson and his three friends went to the dressing-room, and, having put on bathing suits, they walked to the deeper end of the tank, and there entered the water by diving in, after having passed a painted, but somewhat dimmed, sign which was designed to give warning that, "Persons diving do so at their own risk." There is no evidence that Johnson observed the sign at any time, although Peck and Halvorsen had seen it on previous

occasions. Murphy, Peck and Halvorsen each testified that after entering the water and by standing up in it the depth was found to be between 3 and 3½ feet, but no one remembered having seen Johnson standing up in the water, although they were together in plain view of each other all the time. They had been swimming and diving about 15 minutes. Peck and Halvorsen each had dived off the bank three or four times, and Johnson had done the same thing twice. Murphy had dived off the spring-board three or four times before Johnson dived off the spring-board. Halvorsen testified:

That he saw Johnson dive in. "He stood upon the board. I don't know, in some way he must have lost his balance. He was going to make a long dive, to make it shallow in the water; and in some way, when he went to spring, his feet kind of went out, and he came right straight down." That "he couldn't come down straight in three feet of water."

When asked to explain how Johnson dived off when hurt, Ray Peck said that:

"He stood on the board, and ·I was swimming toward the ladder. I was swimming sideways, and I could see Arthur dive, and I seen him as he came down. His foot seemed to slip, or he lost his balance in the air, and he came down straight, and I said, 'That was a pretty straight one, old man,' and turned and swam to the ladder."

1. Stating the law with reference to, and as limited by, the facts in the instant case, it may be said that the defendant was not an insurer of the safety of Arthur Johnson: *Levinski* v. *Cooper* (Tex. Civ. App.), 142 S. W. 959; *Williams* v. *Mineral City Park Assn.*, 128 Iowa, 32 (102 N. W. 783, 111 Am. St. Rep. 184, 5 Ann. Cas. 924, 1 L. R. A. (N. S.) 427); *Scott* v. *Uni-*

*versity Athletic Assn.,* 152 Mich. 684 (116 N. W. 624, 125 Am. St. Rep. 423, 15 Ann. Cas. 515, 17 L. R. A. (N. S.) 234); 38 Cyc. 269. Where a person, however, provides accommodations of a public nature, that person is required to use reasonable care and diligence in furnishing and maintaining such accommodations in a reasonably safe condition for the purpose for which they are apparently designed and to which they are adapted. If for any reason the accommodations are not reasonably safe and suitable for the purposes for which they are ordinarily used in a customary way, then the public should be excluded entirely, or appropriate notice of the unsafe and unsuitable condition should be given, and persons warned of the dangers in using them. The spring-board and the water beneath it constituted the accommodations which the defendant furnished to the deceased, who was a patron for hire, and, as such, was using them for diving purposes, to which they were adapted, and in the way in which they were customarily used. Persons patronizing the natatorium have a right to assume that the defendant has performed its duty, and that reasonably safe and suitable accommodations have been furnished: 38 Cyc. 268; *Barrett* v. *Lake Ontario Beach Imp. Co.,* 174 N. Y. 310 (66 N. E. 968, 61 L. R. A. 829). If by reason of the shallowness of the water the spring-board and the water beneath it were not reasonably safe for diving, then it was the duty of defendant to warn Arthur Johnson of the unsafe condition in order that he might be made aware of the danger; and therefore, if defendant failed to perform its duty, it was guilty of negligence which would be actionable if proximately causing the injury, unless the deceased was himself chargeable with contributory negligence: *Turlington* v. *Tampa Electric Co.,* 62

Fla. 398 (56 South. 696, Ann. Cas. 1913D, 1213, 38
L. R. A. (N. S.) 72); *Larkin* v. *Saltair Beach Co.*, 30
Utah, 86 (83 Pac. 686, 116 Am. St. Rep. 818, 8 Ann.
Cas. 977, 3 L. R. A. (N. S.) 982); *Barrett* v. *Lake
Ontario Beach Imp. Co.*, 174 N. Y. 310 (66 N. E. 968,
61 L. R. A. 829); *Higgins* v. *Franklin County Agr.
Soc.*, 100 Me. 565 (62 Atl. 708, 3 L. R. A. (N. S.)
1132); *Williams* v. *Mineral Park Assn.*, 128 Iowa, 32
(102 N. W. 783, 1 L. R. A. (N. S.) 427, 111 Am. St.
Rep. 184, 5 Ann. Cas 924); *Boyce* v. *Union Pac. Ry.
Co.*, 8 Utah, 353 (31 Pac. 450, 18 L. R. A. 509).

2. One of the objects of the rule requiring the
owner of a place of amusement like the one main-
tained by defendant to warn patrons of danger is to
acquaint the patron with the hazard so that he may
avoid injury. If the deceased had knowledge of the
shallowness of the water and the danger incident to
diving from the spring-board, then he knew all and
no less than he could have known had defendant ex-
pressly warned him of the risk. If the defendant had,
in fact, cautioned Johnson against the peril, and, not-
withstanding such warning, the latter dived off the
spring-board, then, on the facts of the instant case,
the defendant would not be liable because of the
knowledge imparted to Johnson; and so, too, the same
result follows if Johnson did, in fact, know of the
danger, even though not told by the defendant. If,
with knowledge of the danger, Johnson placed him-
self in peril, and, on account thereof, was injured, he
was chargeable with contributory negligence: *Larkin*
v. *Saltair Beach Co.*, 30 Utah, 86 (83 Pac. 686, 116
Am. St. Rep. 818, 8 Ann. Cas. 977, 3 L. R. A. (N. S.)
982); *Bass* v. *Reitdorf*, 25 Ind App. 650 (58 N. E. 95);
29 Cyc. 474. Arthur Johnson was a good diver; he
had been in the plunge at least on two prior occasions

when the water was at its usual depth of about seven feet; he and his friends were told, upon making inquiry, that the water was between 3 and 3½ feet deep, and that it was shallow, but that the water was coming in fast; he and his companions sat around and waited "for the water to fill up," because the shallowness was apparent; he could not well have avoided seeing his friends standing up in the water; and consequently he must have known the depth of the water. It is also clear that he knew and realized the danger of diving off the spring-board into the water at the same time because, as Halvorsen said, Johnson was going "to make a long dive to make it shallow in the water," and his feet slipped, or he lost his balance in the air, and he came down straight.

The evidence has been narrated and considered in a light most favorable to the plaintiff, and the conclusion is inevitable not only that Johnson knew the depth of the water, but that he also appreciated the danger. The fact that he attempted "to make a long dive to make it shallow in the water" reflects the knowledge then had by the deceased. After making due allowance for the difference in temperament, knowledge and judgment of different men, it is plain that reasonable minds would draw no other inference or conclusion from the unchallenged facts than that the deceased was guilty of contributory negligence because he dived off the spring-board with knowledge of the existing conditions and a realization of the hazard: *Walsh* v. *Oregon R. & N. Co.*, 10 Or. 250; *Massey* v. *Seller*, 45 Or. 267 (77 Pac. 397).

The judgment of nonsuit was correct, and is affirmed.    Affirmed.