EMILE BLANCHETTE *vs.* UNION STREET RAILWAY COMPANY.

Bristol.    October 22, 1923. — April 8, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* In maintenance of diving chute.

At the trial of an action against a street railway company for injuries received by the plaintiff while using a diving chute in waters adjacent to a park maintained and operated by the defendant, it appeared that the plaintiff was using the chute as an invitee for hire of the defendant; that the bottom of the chute faced the shore; that the plaintiff approached the chute by swimming from the shore on its left side as it faced him, going to the rear and mounting a platform there on which the chute stood; that at the top and facing from the right hand side of

the chute as it faced the shore was a large sign reading: " Notice Bathers Use This Float and Appliances at Their Own Risk; " that the plaintiff did not see the sign; that, following others and doing as they did, he mounted the chute and went down it head first and, because of the shallowness of the water, struck bottom and was injured. The trial judge ordered a verdict for the defendant. *Held*, that

(1) It could not be ruled as a matter of law that negligence of the plaintiff contributed to his injuries or that he had assumed any risk that attended his use of the chute;

(2) If it were found that by reason of the shallowness of the water the chute and the water beneath it were not reasonably safe for diving, it was the duty of the defendant to warn the plaintiff of the unsafe condition in order that he might be made aware of the danger, and, if it failed to perform that duty, it was guilty of negligence for which it was responsible in the absence of contributory negligence or assumption of risk on the part of the plaintiff;

(3) In order for the warning sign to have the effect of. limiting the duty of the defendant to the plaintiff, the plaintiff must have had knowledge of it, and must have accepted the invitation of the defendant subject to the absence of any duty of the defendant to warn of dangers that were not visible to ordinary inspection: it could not be ruled as a matter of law in the circumstances that the sign had such an effect;

(4) It was a proper exercise of discretion on the part of the trial judge to exclude questions relating to the opinion of the plaintiff at the time as to whether it was safe to use the chute and as to what influence seeing another person use it had upon his course of action.

TORT for personal injuries, received when the plaintiff was using a diving chute maintained by the defendant in tidal waters at Fort Phoenix Park at Fairhaven, the injuries being caused by the water being too shallow. Writ dated February 18, 1921.

In the Superior Court, the action was tried before *Wait*, J. Material evidence is described in the opinion. At the close of the evidence, a verdict was ordered for the defendant. The plaintiff alleged exceptions.

The case was argued at the bar in October, 1923, before *Rugg*, C.J., *DeCourcy*, *Pierce*, & *Jenney*, JJ., and afterwards was submitted on briefs to all the then Justices excepting *Wait*, J.

*A. Auger*, (*E. Auger* with him,) for the plaintiff.

*D. E. Hall*, (*T. F. O'Brien* with him,) for the defendant.

PIERCE, J. This is an action of tort to recover for the plaintiff's personal injuries received as the natural result of

sliding down a diving chute situated upon a raft in an arm of the sea adjacent to Fort Phoenix Park in Fairhaven.

The declaration is in three counts, the second of which is now waived. In substance the first count alleges that the defendants maintained for hire a bathing house and beach at Fort Phoenix; that in connection with the beach and bathing house, it let rooms for hire for its profit; that in connection therewith it maintained a floating raft with a chute or slide thereon to be used by the bathers to dive and slide into the water; that the raft and chute were held out by the defendant to be safe for use by the bathers, including the plaintiff; that on account of the negligence of the defendant, the raft was placed or allowed to be placed, by the defendant, in too shallow water to be safe for use by bathers; that the plaintiff in the exercise of due care, and in ignorance of the fact that the raft was in too shallow water and therefore dangerous and unfit for use, used the chute in a proper manner, came down the slide into the water, struck his head against the bottom, and was severely injured.

The third count repeats the allegations of the first count as respects the invitation of the defendant and the use of the raft and chute by the plaintiff, and in general terms declares that the alleged negligent act of the defendant, which resulted in the harm to the plaintiff, was the maintenance of " a dangerous apparatus in connection with its bathing house and beach, . . . which was dangerous to use, and without informing the public thereof."

The defendant's answer is a general denial, contributory negligence, and assumption of risk.

At the close of the evidence the trial judge, on a written motion, directed a verdict for the defendant. The case comes before this court on exceptions taken by the plaintiff to the said direction, and upon exceptions to the refusal of the trial judge to receive certain evidence offered by the plaintiff, which is hereafter referred to.

The jury warrantably could have found that the defendant owned, maintained and controlled the raft and the chute upon its admission that on the day of the accident it " was the owner of land in Fairhaven in the county of Bristol,

bounded southerly in whole or in part by the sea or ocean, bounded westerly in whole or in part by land on which a fort was or now is situated called Fort Phoenix; " and that on said day, August 13, 1920, " there were bath houses on said land owned by the defendant for the use and convenience of bathers for hire." In addition there was evidence that the defendant " paid for keeping the premises up," hired a caretaker, and that it owned " the towels and the laundry, also the raft," and almost all of the bathing suits. There was also evidence that all the money received from the bath houses, from renting towels, and from the sale of soda and other things, was deposited in the Fairhaven National Bank in the name of the defendant and in part was used to pay the permanent help.

The raft in question was built on the beach in July, 1920. It was owned by the defendant and was placed in the water by men employed by one Whitfield assisted " by men that worked for the Union Street Railway " and it was moored in the water opposite the bath houses on the land above described and owned by the defendant. The raft was eighteen feet wide, fifty feet long, and two feet deep. It was secured by anchors and chains in its particular place, with its end toward the land. At the north end of the raft there was a chute starting at a platform some fifteen feet above the flooring of the raft, and sloping down toward the water. Access to this chute or slide was by means of a ladder which led to a little platform at the southerly end of the chute. There was also a pump emptying into the chute by which bathers could, if they desired, pump water into the chute and thus render it more slippery. On the west side of the railing which was around the platform at the elevated end of the chute, was a large sign, with a white background, upon which was painted in large, four-inch, black letters, the words:

NOTICE
BATHERS USE THIS
FLOAT AND APPLIANCES
AT THEIR OWN RISK

This sign was upon the raft when it was moored in the water in July, 1920; the accident was August 13, 1920. The raft was somewhat over one hundred feet out from highwater mark.

The evidence as to the facts of the accident could reasonably have been found to be, that the plaintiff was twenty-five years old; that he had some ability as a swimmer; that "he never was much of a success as a diver;" that he had been to Fort Phoenix Park bathing half a dozen times before the war, when there used to be two rafts but no chute; that on the afternoon of August 13, 1920, a bright, clear day, he went on one of defendant's cars to the park, hired a locker in the defendant's bathhouse, put on his bathing suit, sat in front of the bathing house for a time, saw the chute being used by bathers, walked out into the water near a pier which ran into the sea at some distance to the east from the raft, swam out to the south beyond the raft and then turned and swam back to the raft, boarding it at the south end which was the end farthest from the shore; that when he got upon the raft there were fifteen or more persons upon it; that he saw the chute being used by bathers; that there were two or three persons on the platform when he mounted it; that he saw a person pump water into the chute and saw that person go down head-first; that he in turn pumped water into the chute, lay on his stomach with his hands outstretched in front of him, let himself go without any particular observation or thought as to whether the tide was in or out, or as to the depth of the water at that end of the raft, and struck his head on the bottom of the beach, that he was dazed for a minute, then was able to get his head out of the water and call for help; that the water where the plaintiff landed was two or two and one half feet deep; that he could not tell the depth of the water with his eyes when on top of the platform because the water was roily, the mud being stirred up by about two hundred bathers in the water.

There was sufficient evidence that the blow on the head was an adequate cause for the condition of the plaintiff as disclosed by the evidence. There was evidence that a safe

depth of water in which to dive through the means of a chute such as this would be six feet. There was a good deal of evidence about the plaintiff's degree of familiarity with the conformation of the beach; about the question whether he made any effort to ascertain the depth of the water; about his knowledge of the proper or safer way to use such a chute, or to dive in general; about his posture upon this particular occasion; about his knowledge of the action of the tide and its effect upon the depth of the water from time to time at the place of the accident.

While all the evidence was important and relevant upon the inferential fact to be proved by the defendant, that the plaintiff when injured was not in the exercise of due care and had assumed the risk attending the use of the raft and appliances which indisputably were provided for the bathers by the defendant, it could not be ruled rightly and as a matter of law upon the conflicting testimony that the plaintiff's negligence contributed to his injury or that he had assumed the risk of any harm which attended such use.

The case of *Johnson* v. *Hot Springs Land & Improvement Co.* 76 Ore. 333, differs from the case at bar in that the plaintiff knew of the depth of water and dived with knowledge of the existing conditions and a realization of the hazards. The cases cited for the defendant rest upon the premise that there was a real danger, that the possibility of there being such was apparent and was readily ascertainable by investigation. Such cases manifestly are distinguishable from cases like the one at bar where the jury could find the plaintiff had reasonably acted upon the assumption that the place which he used at the express invitation of the defendant apparently was reasonably safe to use for the purpose to which it was adapted in the way in which it and the appliances were customarily used. The defendant, as the provider of accommodations of a public nature for hire, was bound to use reasonable care in furnishing and maintaining such accommodations for the purpose for which they were apparently designed and to which they are adapted. If by reason of the shallowness of the water the chute and the water beneath it were not

reasonably safe for diving, it was the duty of the defendant to warn the plaintiff, as an invitee for hire, of the unsafe condition in order that he might be made aware of the danger, and, if it failed to perform this duty, it was guilty of negligence for which it would be responsible unless the plaintiff was guilty of contributory negligence or had assumed the risk of the conditions.  *Johnson* v. *Hot Springs Land & Improvement Co. supra.   Turlington* v. *Tampa Electric Co.* 62 Fla. 398; Ann. Cas. 1913 D, 1213.  *Larkin* v. *Saltair Beach Co.* 30 Utah, 86; 8 Ann. Cas. 977.  *Barrett* v. *Lake Ontario Beach Improvement Co.* 174 N. Y. 310; 61 L. R. A. 829.  See note to *Frye* v. *Omaha & Council Bluffs Street Railway*, 106 Neb. 333, in 22 A. L. R. 607; *Thompson* v. *Lowell, Lawrence, & Haverhill Street Railway*, 170 Mass. 577; 40 L. R. A. 345.

The case of *Sullivan* v. *Ridgway Construction Co.* 236 Mass. 75, in its statement of the law resembles *Johnson* v. *Hot Springs Land & Improvement Co. supra,* and decides upon the facts of that case that the dangers were obvious and no warning was necessary.

There remains the question of the effect to be given to the sign which was posted upon the raft.

The evidence warranted a finding that the plaintiff was not aware of the sign and did not know of its contents. The defendant was bound to show by evidence direct or circumstantial that its invitation to use the raft and chute was not absolute but was limited in terms to a use at the risk of the invitee.   Undoubtedly it was within the right of the defendant to define its obligation by such a warning sign as was posted in this case, and thereby limit its duty to its patrons.   But to have such effect it must prove that the invited persons had knowledge of it, and that they accepted the invitation subject to the absence of any duty of the owner and invitor to warn of dangers which were not visible to ordinary inspection.   *Renaud* v. *New York, New Haven & Hartford Railroad,* 210 Mass. 553, 557.   The signs in *Bass* v. *Reitdorf,* 25 Ind. App. 650, relied on by defendant gave notice that parts of the premises were not usable and is distinguished from the case at bar where all

the premises were designed for such use as the plaintiff made of them.

The other exceptions argued by the plaintiff related to the exclusion, within a proper exercise of discretion by the trial court, of questions about the plaintiff's opinion at the time, whether it was safe to use the chute, and about what influence seeing another person use it had upon his course of action. *Whitman* v. *Boston Elevated Railway*, 181 Mass. 138. *Jeddrey* v. *Boston & Northern Street Railway*, 198 Mass. 232, 235.

The case should have been submitted to the jury.

*Exceptions sustained.*