Robert J. CLEARY, by his father and next friend, Mike Cleary, Sr., Plaintiff-Appellant,

v.

INDIANA BEACH, INC., a Corporation, Defendant-Appellee.

No. 12591.

United States Court of Appeals Seventh Circuit.

Jan. 20, 1960.

Rehearing Denied April 13, 1960.

·544

John E. Cassidy, Sr., Peoria, Ill., Harry P. Schultz, Lafayette, Ind., John E. Cas-sidy, Jr., Cassidy & Cassidy, Peoria, Ill., for plaintiff-appellant.

George T. Schilling, Lafayette, Ind., Stuart, Branigin, Ricks & Schilling, Lafayette, Ind., Bomberger, Wilson, Crites & Belshaw, Hammond, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, SCHNACKENBERG, Circuit Judge, and MERCER, District Judge.

MERCER, District Judge.

Plaintiff, while visiting friends at a resort operated by defendant, was seriously and tragically injured when he dived from a pier, maintained in conjunction with defendant's beach, into approximately two and one-half feet of water. He now appeals from an adverse judgment entered by the court below on the jury's verdict finding the issues in defendant's favor in his action for damages for injuries.

Plaintiff. asserts as error certain rulings by the court on the admission and exclusion of evidence, on instructions to the jury, permitting the jury to separate during the deliberation on their verdict and in the order of the court denying his motion to amend his complaint which was filed after the verdict. We will consider the last two contentions of error first because if those two contentions are meritorious and would require a reversal of the judgment below, it would be unwise for us to comment extensively upon the evidence which undoubtedly we must do if we consider other errors asserted by plaintiff. Glasser v. United States, 315 U.S. 60, 67, 62 S.Ct. 457, 86 L.Ed. 680.

The case was submitted to the jury at approximately 4:30 p. m. on July 14, 1958. After submission of the case to the jury plaintiff's counsel advised the court that he was going to Chicago, but that he could be in court, if needed, within 30 minutes after notice. He left an address and phone number with an official of the court where he could be reached while in Chicago. The jury deliberated until about 4:00 a. m. on July 15th, at

which time the trial judge told the jurors to go home, get some rest and come back at 1:00 p. m. of the same day to continue their deliberations. The judge admonished the jury not to talk to anyone about the case while they were separated and not to resume their deliberations until the whole jury had reassembled on the following afternoon. At 1:00 p. m. on July 15, 1958 the jury resumed its deliberations and at about 5:25 the same afternoon rendered its verdict in favor of defendant. While he was still in Chicago, on the morning of the 15th, plaintiff's counsel called Judge Swygert's law clerk at Hammond and was then advised that the jury had been sent home and permitted to separate, but would return at 1:00 p. m. on that day to resume their deliberations. Following that telephone conversation counsel left Chicago and went to Peoria, Illinois.

Plaintiff made no objection to the jury's separation or to its resumption of deliberation after separation. In fact, nothing was done until after the adverse verdict had been returned and received when plaintiff's counsel then moved to supplement the record with testimony of the Judge and the United States Marshal and other court officials as to the facts surrounding the dispersal of the jury at 4:00 a. m. on July 15.

Plaintiff now contends that the action of the trial judge in permitting the jury to separate and then return and resume deliberation, is a violation of the guarantee of trial by jury contained in the Seventh Amendment to the Constitution of the United States. That contention is not well taken. In Galloway v. United States, 319 U.S. 372, 388–396, 63 S.Ct. 1077, 87 L.Ed. 1458, the Court discussed at length the meaning of the Seventh Amendment guarantee of the right of trial by jury as it existed at common law. There it is said that the Seventh Amendment guarantees only the basic concept of trial by jury, not that trial by jury shall forevermore follow common law modes which were themselves constantly changing, and which varied from state to state, and between juris-

dictions within the United States and England, at the time of the adoption of the Bill of Rights to the Constitution. The recent case of Byrne v. Matczak, 3 Cir., 254 F.2d 525, is pertinent and is factually similar to the case at bar. The case, a wrongful death action, was submitted to the jury at 3:56 p. m. At 10:35 p. m. the jury announced that it had not agreed on a verdict. After admonishing the jury to discuss the case with no one, the trial judge dismissed the jurors for the night. The next morning when the jurors returned, deliberation was resumed. The verdict was returned at 5:11 p. m. on that day. The appellant argued that the procedure was improper and was a denial of the right to trial by jury as guaranteed by the Seventh Amendment. In rejecting those contentions of error, the court said that two points controlled the question of propriety of permitting dispersal:

"First, that the decision whether to allow dispersal is primarily a matter requiring an exercise of discretion of the district judge, and, second, that reversal is proper only when the judge has acted arbitrarily, or when prejudice is shown to have resulted from the dispersal." 254 F.2d at page 528.

On the question whether dispersal of the jury during deliberation was a violation of rights guaranteed by the Seventh Amendment, the court reviewed several cases, including Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188; Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919, and Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, and concluded "that the constitutional conception of jury trial is not inflexible in all details, so long as the essential elements of the institution are preserved. * * * In this view, fair new procedures, which tend to facilitate proper fact finding, are allowable, although not traditional." 254 F.2d at pages 528–529.

The control of the jury, and the question whether to allow a jury to sepa-

rate, while deliberating and reconvene after separation to resume deliberation, is a matter within the sound discretion of the trial court. Byrne v. Matczak, 3 Cir., 254 F.2d 525, certiorari denied 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58; Franklin v. Shelton, 10 Cir., 250 F.2d 92, 99, certiorari denied 355 U.S. 959, 78 S. Ct. 544, 2 L.Ed.2d 533; Bratcher v. United States, 4 Cir., 149 F.2d 742, certiorari denied 325 U.S. 885, 65 S.Ct. 1580, 89 L.Ed. 2000. The trial judge is in a better position than are we to appraise the intangibles determinative of the question whether separation ought to be allowed. He is in position to make an informed guess whether a jury is hopelessly deadlocked, or whether further deliberation is likely to be fruitful and avoid a retrial of a prolonged case. He is also in the position to determine whether deliberation has continued for such a length of time and to such extent that weariness of the jurors is likely to preclude impartial and fruitful deliberation if deliberation is continued without pause. Cf. Byrne v. Matczak, supra, 254 F.2d at page 529. Absent proof that the judge has acted arbitrarily, or proof that plaintiff was in fact prejudiced by the separation and reconvening of the jury, the fact of separation can never be a ground for reversal of a judgment. No arbitrariness or prejudice is shown here.

■ Moreover, the question was not preserved by plaintiff for review. Plaintiff's counsel absented himself from the premises of the court while the jury was deliberating. While court officials were advised where counsel could be reached, and were advised that upon notice counsel could be in court within 30 minutes, nevertheless, it is illogical to assume that a district court must give notice to counsel and then wait 30 minutes for the parties to appear in court before routine communications are had with the deliberating jury. The determination to allow dispersal was made in open court and the judge could properly assume counsel had elected not to be present. Prior to resumption of deliberation,

plaintiff's counsel had knowledge that the jury had been dispersed and that the jury was returning later on the same day to resume deliberation in this case. No objection was then made to the dispersal, or to the resumption of deliberation. Instead, counsel took his chances, went on about his business and raised his voice in protest against the procedure for the first time after the verdict was in and the issues had been determined adversely to his client. Under those circumstances, plaintiff is not in position now to complain. Franklin v. Shelton, 10 Cir., 250 F.2d 92, certiorari denied 355 U.S. 959, 78 S.Ct. 544, 2 L.Ed.2d 533; Byrne v. Matczak, 3 Cir., 254 F.2d 525, 528, certiorari denied 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58; Cf., Maloney v. Brandt, 7 Cir., 123 F.2d 779, 782; McComb v. Goldblatt Bros., 7 Cir., 166 F.2d 387, 389–390. In the latter case we held that an appellant could not raise in this court contentions of error against procedures followed by the district court in determining whether an injunction should be issued because he had failed to object to the procedures adopted and had acquiesced in the lower court's action. The principle we announced there is equally applicable to the case at bar. No timely objection was made which would have permitted the trial judge to consider the question of the propriety of his action in permitting the jury to separate. For that reason, also, the judgment is not assailable on the ground that the court permitted dispersal of the jury.

■ The next contention which we must consider is the contention that the trial court erred in denying plaintiff's motion to amend his complaint after verdict. The complaint sounded on negligence. The case was tried, submitted to the jury, and, by the jury considered on the theory of negligence. After the verdict, plaintiff filed a motion, assertedly on authority of Fed.R.Civ.Proc. 15(b), 28 U.S.C.A., to amend his complaint to allege that defendant had been guilty of wilful and wanton misconduct. That motion was denied.

We think it indisputable that the action of the trial judge in denying the motion to amend is unassailable. If Rule 15(b) were applied in the manner in which it is here sought to be used, litigation might never end. We think it obvious that the Rule was not intended to permit a party to amend his pleadings after verdict and, thereby upset the verdict by asserting a new theory which was not included in the original pleadings, and upon which the case was not tried.

We have previously approved the principle that Rule 15(b) cannot be used in the above fashion. Apex Smelting Co. v. Burns, 7 Cir., 175 F.2d 978, 981. We there quoted and approved the following language from Hart v. Knox County, D.C.Tenn., 79 F.Supp. 654, 658:

"Plaintiffs would shift their ground and try a new theory of recovery. The effect of the amendment they propose would be not to conform the pleadings to a judgment they have won, but to jeopardize and perhaps to overthrow a judgment they have lost. It is a prime purpose of (15(b)) to avoid the necessity of new trials because of procedural irregularities, not to set judgments aside and make new trials necessary. If this latter application of the Rule were permitted, a losing party, by motions to amend and rehear, could keep a case in court indefinitely, trying one theory of recovery or defense after another, in the hope of finally hitting upon a successful one."

See to same effect, Trantham v. Canal Ins. Co., D.C.Tenn., 117 F.Supp. 241, affirmed 6 Cir., 220 F.2d 752.

■ Since plaintiff did not submit the case for trial on a wilful and wanton theory, he may not now rely, in this court, on a wilful and wanton theory for reversal of the judgment. Chicago & E. I. R. Co. v. Southern Ry. Co., 7 Cir., 261 F.2d 394; Apex Smelting Co. v. Burns, 7 Cir., 175 F.2d 978; Gilby v. Travelers Ins. Co., 8 Cir., 248 F.2d 794;

Green v. Dingman, 8 Cir., 234 F.2d 547; Inman-Poulsen Lumber Co. v. C.I.R., 9 Cir., 219 F.2d 159. Therefore, we do not consider plaintiff's contention that the evidence shows defendant guilty of wilful and wanton misconduct.

■ Defendant operates a resort area on Lake Shafer on the Tippecanoe River in Indiana. The various facilities of the area are open to the public for hire on a fee basis. The swimming and bathing facilities of the resort with which this case is concerned were divided into three separate units. A U-shaped pier extended eastwardly out from a beach into the lake, enclosing a bathing area of substantial size. A diving tower was situated some 40 feet northerly and westerly from the north leg of the U-shaped pier. To the south and west of the south leg of the pier, defendant maintained an area for swimming which was, like the diving tower, outside the area enclosed by the pier itself. The north leg of the pier extended from the beach approximately 152 feet out into the lake. The pier then curved southward for a distance of 265 feet, at which point it curved westward 150 feet to the beach. The pier was so constructed that the water of the lake could flow freely beneath it, obstructed only by the piles supporting the pier platform. The pier was lighted for night use and was equipped with benches on which bathers could sit. A life guard was maintained by defendant on the pier each day until approximately 9 o'clock p. m. When the life guard went off duty at that time a sign was posted upon the pier which advised bathers that no life guard was present. At the time plaintiff was injured about 11:00 p. m., there was no life guard on duty, but the signs warning of that fact were prominently displayed on the pier.

On July 31, 1956, plaintiff went to defendant's resort to visit friends. He arrived at the resort in the early evening. After spending some time visiting and looking over the resort facilities, plaintiff and two friends got into their bathing suits and entered the pier through a turn-

stile at the beach end of the north leg thereof, traversed the north leg of the pier to the northeast corner of the U. There they dived into the water on the inside of the pier and spent several minutes swimming and diving in the enclosure of the pier. They then retraced their steps along the north leg of the pier to a point opposite the diving tower where they entered the water, swam over to the diving tower and spent some time diving. After their stint at the diving tower, plaintiff and his friends then returned to approximately the same spot along the north leg of the pier, climbed onto the pier and left the beach area. The evidence is disputed as to whether other people, and, if any, how many, were swimming or bathing in the enclosure formed by the U-shaped pier at the time the boys were swimming there.

Plaintiff and his friends then went back to the cottage at which plaintiff was visiting and changed from their swim trunks. Later the same evening plaintiff and the two boys met some girls with whom they were acquainted. A date was made to meet on the pier and go swimming. At about 11:00 p. m. the plaintiff and his two friends entered onto the north leg of the pier where the girls were then waiting for them. Plaintiff ran, or walked at a fast pace, ahead of the other two boys, and, as he neared the place where the girls were waiting, he dived off the pier into the water in the enclosure. At that point the water was about two and one-half feet deep. Plaintiff's head struck the bottom of the lake, fracturing the vertebrae in his neck. As a result of that injury plaintiff is permanently paralyzed from the neck down.

The day of the accident was plaintiff's first visit to defendant's resort. Plaintiff was 18 years of age at the time of the accident. He was an experienced swimmer and diver. He testified that he had swam and dived in various swimming pools, rivers and lakes. Plaintiff testified that he had not seen anyone dive off the pier at any point except at the northeast corner of the structure where he and his friends had dived earlier the same day. He further testified that he had not been in the water in the pier enclosure at any place other than at the northeast and east end of the enclosure where he and his friends had dived and swam that same evening. Plaintiff had not previously been in the water of the enclosure at the point at which he dived to his injury, and he had made no inquiry or investigation as to depth of the water at that point before he dived. He testified that he could not tell how deep the water was just by looking at it.

Defendant introduced in evidence several signs which had been displayed on its premises on the day of the accident. These included identical signs which had hung near the entrance to each of the north and south legs of the pier, each of which contained the following legends: "Notice, Be Safe; Do not Run on or Dive off of Pier, Wrestle or Push Others; Use Diving Boards with Caution; Do not Dive Until You Have Investigated Depth of Water; Don't Hang on Underneath Merry-Go-Round; Don't Swim Outside of or Underneath Pier". On the steps of the diving tower, a sign had hung which contained the following, among other, language: "Be Careful! Investigate Depth of Water Before You Dive". Introduced also was the sign which had warned that there was no life guard on duty.

Each of the above signs were displayed on defendant's premises on the day of plaintiff's injury. There was some testimony that on said date, some letters of the sign which hung near the entrance to the north leg of the pier were faded but there was also testimony which tended to prove that the sign was in readable condition, brightly illuminated and clearly visible at night.

We think it clear that the case was properly submitted to the jury. Actually, the contentions against the sufficiency of the evidence to support the verdict rest, in part, upon the wording of the verdict itself. The case was submitted for a general verdict. Neither a special verdict nor special interrogatories were requested by either party. The jury re-

549

turned a verdict in the following language: "We, the Jury, Find for the Defendant by finding both Parties negligent." On the strength of that verdict, plaintiff now argues that the jury found defendant guilty of negligence and that a new trial should have been granted because there was not sufficient evidence upon which the jury could find that plaintiff was contributorily negligent.

◼ We might dispose of that contention by treating all language of the verdict other than the finding of the issues for defendant as surplusage, since gratis comments by a jury of the reasoning which led it to its general verdict are unnecessary to the jury's function of deciding the issues of the case.

◼ We do not base our decision upon that ground, however. When the evidence is considered most favorably to defendant, as we must now consider it, the jury may well have found plaintiff to have been contributorily negligent. Thus, we think the jury could have concluded that plaintiff had been sufficiently warned of the dangers inherent in diving from the pier without first investigating the depth of the water, or, the jury could have found that plaintiff knew, or in the exercise of reasonable care should have known, that the water at the point at which he dived was too shallow for diving. While it is true that it was defendant's burden to prove contributory negligence, Robertson Bros. Dept. Store v. Stanley, 228 Ind. 372, 380, 90 N.E.2d 809, 812, that burden may be sustained by inferences on the whole of the evidence. It is not necessary that such proof rest wholly on positive testimony by defense witnesses. No purpose would be served by summarizing the evidence in greater detail than we have heretofore done. Suffice it to state that we have reviewed the whole transcript of the evidence and we are convinced that there is sufficient evidence upon which the jury could have found that plaintiff was contributorily negligent.

Plaintiff can find little comfort in the cases upon which he relies to support his arguments on this phase of the case. Indeed, plaintiff's argument is close to a contention that defendant was an absolute insurer of plaintiff's safety at the time of his injury. That is an erroneous contention. The measure of the reciprocal duties and rights between the operator of a resort facility and a paying patron of that facility is defined in Johnson v. Hot Springs Land & Improvement Co., 76 Or. 333, 148 P. 1137, 1139, L.R.A. 1915F, 689, in the following language:

"Where a person * * * provides accommodations of a public nature, that person is required to use reasonable care and diligence in furnishing and maintaining such accommodations in a reasonably safe condition for the purposes for which they are apparently designed and to which they are adapted. If for any reason the accommodations are not reasonably safe and suitable for the purposes for which they are ordinarily used in the customary way, then the public should be excluded entirely, or appropriate notice of the unsafe and unsuitable condition should be given, and persons warned of the dangers in using them. The springboard and the water beneath it constituted the accommodations which the defendant furnished to the deceased, who was a patron for hire, and, as such, was using them for diving purposes to which they were adapted, and in a way in which they were customarily used. Persons patronizing the natatorium have a right to assume that the defendant has performed its duty, and that reasonably safe and suitable accommodations have been furnished. * * * If by reason of the shallowness of the water the springboard and the water beneath it were not reasonably safe for diving, then it was the duty of defendant to warn Arthur Johnson of the unsafe condition in order that he might be made aware of the danger; and therefore, if defendant failed to perform its duty, it was

guilty of negligence which would be actionable if proximately causing the injury, unless the deceased was himself chargeable with contributory negligence. * * *.

"* * * If the defendant had, in fact, cautioned Johnson against the peril, and, notwithstanding such warning, the latter dived off the springboard, then, on the facts in the instant case, the defendant would not be liable because of the knowledge imparted to Johnson; and so, too, the same result follows if Johnson did, in fact, know of the danger, even though not told by the defendant. If, with knowledge of the danger, Johnson placed himself in peril, and, on account thereof was injured, he was chargeable with contributory negligence."

The court then held that the evidence was sufficient to show, as a matter of law, that Johnson had notice of the danger and affirmed a judgment of nonsuit against him.

The other cases relied upon by plaintiff recite and follow the same principles as applicable to a situation wherein injury is occasioned by a dive or plunge into shallow water. Lake Brady Co. v. Krutel, 123 Ohio St. 570, 176 N.E. 226; Waddell's Adm'r v. Brashear, 257 Ky. 390, 78 S.W.2d 31, 98 A.L.R. 553; Louisville Water Co. v. Bowers, 251 Ky. 71, 64 S.W.2d 444; Blanchette v. Union Street Ry. Co., 248 Mass. 407, 143 N.E. 310. To the same effect are, Adams v. Schneider, 71 Ind.App. 249, 124 N.E. 718; Valentine Co. v. Sloan, 53 Ind.App. 69, 101 N.E. 102.

Moreover, the cases cited by plaintiff are factually distinguishable from the case at bar. In each of the Johnson, Lake Brady, Blanchette and Waddell cases, the injured plaintiff dived or plunged into the water from a springboard, chute or rope swing maintained by the respective defendants for diving, or plunging, purposes, and the water beneath the diving structure was too shallow for safe use. In the Bowers case the plaintiff dived into a swimming pool at a point marked to show a depth of water of five feet, whereas the pool contained no more than two feet of water at the point where the plaintiff dived. Furthermore, in each of those cases, except Johnson where a nonsuit was affirmed, the holding was that the case was properly submitted to the jury on the questions of negligence and contributory negligence. To same effect, Adams v. Schneider, 71 Ind.App. 249, 124 N.E. 718; Valentine Co. v. Sloan, 53 Ind.App. 69, 101 N.E. 102.

Here we have an injury sustained in a dive from a pier; no springboards were there installed; a sign warned plaintiff, and others, not to dive from the pier; the accident occurred on a lake beach which, unlike a swimming pool, could reasonably be anticipated to contain waters of varying depths; and plaintiff admitted that he had made no investigation of water depth before he had dived. Also, here, plaintiff's testimony touching the issue of his knowledge, and that of certain other occurrence witnesses called by plaintiff was, in part, contradicted on cross-examination on the basis of statements made by the several witnesses in pre-trial depositions. The case was properly submitted to the jury, and we cannot disturb the judgment entered on the jury's verdict.

 Plaintiff complains that the trial judge permitted defendant to introduce in evidence certain photographs during the course of cross-examination of one of plaintiff's witnesses. There was no error in that ruling. The witness identified each of the photographs as a photograph taken by him and his father at, or near, the scene of the plaintiff's injury on the morning following that occurrence. It was within the realm of the court's discretion to permit the introduction of such evidence during cross-examination of an adverse witness.

 After plaintiff had testified on direct and cross-examination, the court admitted in evidence, and permitted defendant to read to the jury, portions of plaintiff's pre-trial deposition. That ruling was not error but was in accord-

551

ance with the provisions of Fed.R.Civ. Proc. 26(d) (2), which permits the deposition of a party to be used by an adverse party for any purpose.

Finally, plaintiff assigns as error, the court's ruling on the giving and refusal of tendered instructions. We have reviewed the court's charge to the jury and we conclude that it was fair to both parties to the litigation. Particularly, the jury was correctly charged on the law applicable to the issues of negligence and contributory negligence which was applicable to this case.

We find no error in the trial of this cause. Other contentions of error asserted by plaintiff have been considered along with our review of the whole record. We find each to be without merit.

The judgment is affirmed.