Argued October 5, 1962, affirmed February 20, 1963

# BROWN *v.* HAYDEN ISLAND AMUSEMENT COMPANY
## 378 P. 2d 953

*Alonzo P. Stiner,* Portland, argued the cause for appellant. With him on the briefs were Dusenbery, Martin, Beatty & Parks.

*Bruce Spaulding,* Portland, argued the cause for respondent. On the brief were Mautz, Souther, Spaulding, Kinsey & Williamson.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, DENECKE and LUSK, Justices.

LUSK, J.

The plaintiff, a girl fifteen years of age, brought this action to recover damages for personal injuries sustained by her when she dived into a swimming pool owned and maintained by the defendant and

struck her head on the bottom of the pool. She alleged that the defendant was negligent (a) in failing to provide adequate markings showing the depth of the water in the pool and (b) in failing to warn the plaintiff that the bottom of this pool was not constructed in the same manner as other swimming pools in the vicinity of Portland, Oregon, in regard to depth of water near the sides of the pool. There was a jury trial and at the conclusion of the testimony the court denied a motion for a directed verdict made by the defendant. In submitting the case to the jury the court withdrew allegation of negligence (b). The jury returned a verdict for the plaintiff. Thereafter the court, on motion of the defendant, entered judgment for the defendant notwithstanding the verdict and the plaintiff has appealed.

Defendant operates an amusement park in Portland known as Jantzen Beach Park where it maintains, besides two wading pools for small children, a "shallow" pool and a "deep" pool. These pools were built in 1928. The plaintiff was injured in the shallow pool, which is approximately 165 feet running north and south and 100 feet running east and west. It has no springboard or other diving apparatus. Its shallowest parts are at the ends and sides and the floor slopes towards the middle. The maximum depth is approximately five feet. The deep pool adjoins the shallow pool on the east and is equipped with the usual facilities for diving. A photograph of the shallow pool, defendant's Exhibit 12, is herewith reproduced.

On the west side of the shallow pool, midway between the north and south ends, is a concrete abutment which bears the legend "SHALLOW POOL" in conspicuous letters, plainly visible to anyone coming from the dressing room to the shallow pool. On either side

of the concrete abutment are steps leading down into the water. At either end of the pool, near the corners, the word "SHALLOW" in tile is imbedded in the cement. The letters were painted red each year before the opening of the season.

According to the testimony of J. F. Turpin, manager of the park, the shallow pool was used for instruction as well as by anyone who chose to use it.

The plaintiff, who was an experienced swimmer and diver, testified that she liked to go into it first because the water was warmer than in the deep pool. She freely conceded in her testimony that she knew she was diving into the shallow pool.

Plaintiff was a student in high school at the time of the accident. On June 7, 1958, at about seven o'clock in the evening, she and a number of her schoolmates, girls and boys, went to Jantzen Beach Park for a swim and to enjoy the other recreational facilities. Plaintiff had never before been to the Jantzen pool. She paid the regular charge, changed to her swimsuit and went to the shallow pool. Some of the boys had preceded her and were already in the water. She walked to the north end of the pool to a spot a few feet from the east side and looked around for any indication that it might be dangerous to dive. She testified that she made a shallow dive which she described as "at—about a forty-five degree angle to the pool." She took about two steps and dived out toward the middle of the pool. Her "hands hit the bottom and jerked back and my head hit." The doctor who attended her testified that she received a laceration on the top of her head and was apparently diving straight down.

The plaintiff had been accustomed to swimming in a pool at Mount Scott in Portland where there is a shallow pool and a deep pool. According to the plaintiff's testimony, the shallow pool at Mount Scott is about sixty feet long and forty feet wide and it is about four feet deep in its deepest part, with a gradual slope to the opposite end.

The plaintiff was accustomed to diving in the Mount Scott pool at the four foot depth and testified that people commonly dived in this pool. She said

that she knew that all pools are deeper in some places than in others; that the Mount Scott pool in places was from one and one-half to three feet in depth and that she had no information as to the location of the deeper and shallower parts of the Jantzen pool. She testified that she "saw what I thought was the same kind of arrangement as the Mount Scott Pool, a shallow pool and a deep pool; and I took it for granted that this spot where I dove in would be deeper as it was at the Mount Scott Pool."

She gave as reasons why she thought the water was deep where she dived, that close to where she stood there was a handrail evidently for use in getting out of the pool, and that she observed that the water was breast high on her boy friends who were standing approximately in the middle of the pool. These boys averaged about six feet in height. She testified:

"Q When you saw the water on your friends did you draw any conclusions as to the depth of the water in the pool where you were to dive?

"A Yes, I did. I figured if it was that deep on them, then it must be even deeper towards this end, since I figured that was a gradual deepening of the water towards where I was standing so I assumed it would be deep enough for a dive."

She indicated the position of the boys on a diagram of the pool as not quite half the distance to the south end and opposite the northernmost flight of steps leading into the water on the west side of the pool. She said:

"In considering these things I didn't stand there and say, 'Now, it's chest deep on my friends and there's a handrail there so it must be at least as deep on me.' I just kind of generally took in the whole situation and drew a conclusion, I guess."

She also observed people scattered generally throughout the pool, though none in the immediate area where she dived. Plaintiff was asked whether she noticed the steps on the west side of the pool, and, if so, what she thought they meant when she was considering these things before she dived. She answered: "That it must be pretty shallow in that part."

She testified that she could see the bottom of the pool as she stood there before diving, but could not determine its depth. After she dived she estimated that the water was about three feet deep where she struck her head on the bottom. She testified that it would be safe to make a shallow dive into four feet of water and, as previously stated, that this was the depth of the water in the Mount Scott pool at its deepest part.

The parents of the plaintiff went to the scene of the accident a month or several months afterwards—the precise time is not clear—and inspected the pool from outside a wire fence which surrounds the pool. The gate in the fence was locked so that they were unable to get closer than eight or nine feet to the pool. They testified that at the north end they saw the "shallow" markers above described. Mr. Brown testified that "If you looked real close you could see it * * *." Mrs. Brown described the marker as "very pale." The plaintiff was not asked and did not testify whether she observed the markers. A photograph of one of the markers in which the letters were indistinct was identified by the witness Turpin on cross-examination as depicting the marker as it looks after the pool is closed for the season. He attributed its faded appearance to "the elements."

There is conflict in the evidence as to whether there

were any signs indicating the depth of the water in the pool.

To sustain the allegation of the complaint that the defendant was negligent in failing to warn the plaintiff that its pool was not constructed in the same manner as other pools in the vicinity of Portland in regard to depth of water near the sides, the plaintiff called as a witness Harold E. Milliken, assistant chief sanitary engineer for the State Board of Health, who had charge of the swimming pool program of the State Board of Health and who, as a part of his duties, inspected public swimming pools. He testified that he knew of no pools other than the Jantzen pool which are shallow on each end and slope toward the middle. He also testified that in the case of a shallow pool, no purpose other than drainage is served by having the pool deep at one end and shallow at the other.

■ In *Johnson v. Hot Springs Land & Imp. Co.*, 76 Or 333, 337-338, 148 P 1137, LRA 1915F 689, where the plaintiff, who was injured in diving from a springboard into a pool maintained by the defendant, was denied recovery because of contributory negligence, Mr. Justice HARRIS, speaking for the court, stated the rule applicable to a case of this kind as follows:

"Stating the law with reference to, and as limited by, the facts in the instant case, it may be said that the defendant was not an insurer of the safety of Arthur Johnson * * *. Where a person, however, provides accommodations of a public nature, that person is required to use reasonable care and diligence in furnishing and maintaining such accommodations in a reasonably safe condition for the purpose for which they are apparently designed and to which they are adapted. If for any reason the accommodations are not reasonably safe and suitable for the purposes for

which they are ordinarly used in a customary way, then the public should be excluded entirely, or appropriate notice of the unsafe and unsuitable condition should be given, and persons warned of the dangers in using them. The spring-board and the water beneath it constituted the accommodations which the defendant furnished to the deceased, who was a patron for hire, and, as such, was using them for diving purposes, to which they were adapted, and in the way in which they were customarily used. Persons patronizing the natatorium have a right to assume that the defendant has performed its duty, and that reasonably safe and suitable accommodations have been furnished: 38 Cyc. 268; Barrett v. Lake Ontario Beach Imp. Co., 174 N. Y. 310 (66 N. E. 968, 61 L. R. A. 829)."

This language has been cited and quoted with approval by many courts throughout the country.

■ In applying it to the present case, it is to be borne in mind that, as the plaintiff knew, the defendant maintained for the use of its patrons two pools, one, the shallow pool in which she received her injury and which was not equipped with a diving board, and the other the deep pool which was so equipped. There is no evidence that the shallow pool was "ordinarily used in a customary way" for diving or indeed that anyone had ever dived into it before. The plaintiff did not allege in her complaint that the defendant was negligent in failing to warn her by signs or otherwise against diving into this pool, but she did allege that it was negligent in failing to mark the depth of the water. What this actually comes to is a claim that the defendant should have given notice not only that the pool was shallow, but how shallow it was. We think that no such duty rested upon the defendant and that notice to its patrons that the pool was shallow

was sufficient notice to a reasonably prudent person that it was a pool of a particular character maintained for certain limited uses, one of which was not diving. The deep pool with its diving board was an invitation to dive. The shallow pool by contrast carried a warning that it was intended to serve a different purpose.

In this connection it is worthy of note, since the case of the plaintiff is largely built on her experience at the Mount Scott pool, where she had swam hundreds of times, that there is no evidence that the depth of the water at that pool was marked, and that in testifying to its depth the plaintiff resorted to approximations.

The defendant was not charged with knowledge that the plaintiff would assume that the water at the place where she dived was of sufficient depth for diving with safety to herself. She was not warranted in assuming that the pool was deeper at one end than another or, if this were the case, that she was at the deep end; for in going to the spot from which she dived she passed one marker indicating that the water was shallow at the north end of the pool and she decided to dive from a spot only a few feet from a similar marker. She did not testify that she saw the markers, but neither did she deny that she saw them. They were there to be seen and the defendant could rightly assume that they would be seen. The defendant was entitled to assume "that patrons would act as reasonable men act" and that they "would possess such perception of the surrounding circumstances as a reasonable man would have, that they would possess such knowledge of other pertinent matters as a reasonable man would have, and that they would correlate such perception and knowledge with reasonable intelligence and judgment * * *." *Glaze v. Benson,* 205

Md 26, 33, 106 A2d 124, 128. See, also, Restatement, Torts § 289.

The evidence on behalf of the plaintiff as to the faded appearance of one of the markers at some undetermined time is not sufficiently substantial to show that this was the condition of the marker on the day of the accident. The plaintiff introduced no evidence as to when the photograph of a faded marker was taken. The witness Turpin testified that the photograph showed the appearance of the marker after the pools closed for the season. Presumably, if this were not the fact, the plaintiff would have shown when the photograph was taken.

■ The plaintiff seems to have assumed that because people dive from a particular spot in the Mount Scott pool it would be safe for her to dive at a correspondingly located spot at the Jantzen pool. The defendant was not charged with knowledge of the construction of the Mount Scott pool, nor of the manner in which it was used by the plaintiff and others. The defendant was under no duty to maintain a pool constructed as are other pools in the Portland area so long as its pool, as constructed and maintained, was reasonably safe, considering the purpose for which it was built and its customary use. The charge that the defendant was negligent in this regard was properly removed by the court from the consideration of the jury.

■ The mere fact that a pool of the kind in question is not deep at one end and shallow at the other is no evidence of negligence. There must be something in addition which might mislead a reasonable person as to the depth of the water. It is necessary that a pool be deeper at some point than at others for drainage, but beyond this no purpose is served by having a

"shallow" pool deep at one end and shallow at the other. The plaintiff's witness Milliken so testified.

The plaintiff testified that she judged the depth of the water by the fact that it was breast high on her friends in the pool some seventy feet distant from her. She thought that it must be even deeper where she dived, but here again she indulged the unwarranted assumption that the Jantzen pool was built like the Mount Scott pool. Moreover, if, as she testified, she "took in the whole situation" and saw people "scattered throughout the pool" (though not in "the immediate area" where she dived) it must have occurred to her as a reasonably prudent person that this was not a pool the floor of which sloped gradually from the south end to the north end. See photograph, defendant's Exhibit 12.

■ We have examined the cases cited by the plaintiff involving diving accidents in public swimming pools or at bathing beaches in which the courts have held that the questions of negligence and contributory negligence were for the jury, and others collected in the Annotation, 48 ALR2d 104, but we see no occasion to discuss these cases in this opinion. Of necessity, the decision in each case must depend on its own particular facts and circumstances. The governing principles, as stated in *Johnson v. Hot Springs Land & Imp. Co.*, supra, are clear and well established. The task of the court is simply to apply those principles to the evidence. The plaintiff sustained serious injuries in this unfortunate accident which befell her, but the defendant was not an insurer of her safety, and, since there is no evidence of a departure from the standard of care which the law imposes upon the defendant, the court rightly allowed the motion for judgment n.o.v. The judgment is affirmed.

SLOAN, J., dissenting.

Defendant solicits people of all ages and experience to use its pools. Some are acquainted with the peculiar design of the pools, others, like plaintiff, are not. It seems to me that we are not justified in judging plaintiff's actions from the caution of mature years blessed with a measurable degree of hindsight.

The jury should decide if defendants had given adequate warning to unwary patrons of the hazards inherent in this pool.