## GORDON SLEEPRITE CORPORATION *v.* WILLIAM HARRISON WATERS.

[No. 6, October Term, 1933.]

*Decided November 9th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Joseph Wase,* for the appellant.

*Robert France*, with whom were *William Curran, Paul Higinbothom, Walter V. Harrison,* and *Harrison & France,* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The plaintiff, William Harrison Waters, was employed by James J. Moran, for whom he went on April 18th, 1932, to the office of the defendant, the Gordon Sleeprite Corporation, on East Fayette Street, to collect a bill. While engaged on this errand he fell down the defendant's elevator shaft and was injured. He collected compensation from his employer's insurer, and he and the insurer sued the defendant for damages for the injuries sustained (Code, art. 101, sec. 58), and it is from a judgment in their favor that this appeal is taken.

The plaintiff, Waters, testified that he went to the office of the defendant, which was located on the north side of West Fayette Street, adjoining the mattress factory of the defendant on the west. The factory building is Nos. 1240 and 1242 Fayette Street, and the office No. 1244, each having an entrance from the street. The office and factory form an L, in which there is a yard extending from the rear of the office along the west side of the factory fifty feet to an alley. The only access to the factory from the office is from the street and across the yard. The ground floor of the factory is lighted by two windows on each side of the door facing the yard, and an elevator shaft is located opposite and about seven feet from the door. Waters said no one was in the office while he was there. He waited about five minutes, then went out of the office, across the yard and into the factory, and, as stated in the record, he "intended to go up to the elevator gate and holler up the shaft to attract attention, but before he got there he fell down the shaft because the gate nearest to him was up, leaving the shaft unprotected, there being no chain or bar across the pit; that the gate he saw down was on the far side; that it was dark at the elevator shaft and in the building but that he did see the hole." It appears that there were gates on opposite sides of the elevator, and that the near gate was up and the far

one down; that Waters mistook the far gate for the entrance to the elevator, and, in going toward it, passed under the near gate, which was up, and fell into the cellar. He had never been inside the building before the day of the accident. He had on one occasion delivered a machine at the rear door of the factory building, and did not see an elevator then.

The question here is whether the defendant owed Waters any duty for the violation of which it is answerable in damages, or were his injuries the result of his own voluntary act?

The rule by which liability is to be determined, as expressed by Judge Alvey in *Maenner v. Carroll,* 46 Md. 193, 213, is: "A party has the right to use his land as he pleases, except as he may be restrained by duty to the public or to private individuals. But any individual who complains of the manner in which a defendant may have used his own land, should show with certainty and precision both the right of the plaintiff and the duty of the defendant, and in what manner such right and duty have been violated." In the case of an invitee, it was said in *Riganis v. Mottu,* 156 Md. 340, 343, 144 A. 355, 356, that the defendant "was bound either to exercise ordinary care to see that [the] premises were reasonably safe for him, or, if they were not, to warn [him] the appellant of any latent or concealed danger," though "it is oftentimes difficult to determine whether the circumstances make a case of invitation or only of mere license. 'The principle,' says Mr. Campbell in his treatise on *Negligence,* 'appears to be that invitation is inferred where there is a common interest or mutual advantage, whilst a license is inferred where the object is the mere pleasure or benefit of the person using it.'" *Benson v. Balto. Traction Co.,* 77 Md. 535, 541, 26 A. 973, 975.

In these cases of latent or concealed danger on one's premises, it is always a question of fact as to whether one injured comes within the rule, and it is the facts in the case that make the decisions precedents. So that each case must depend largely upon its own facts. *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 450, 146 A. 282; *Maryland State Fair v. Henderson,* 164 Md. 587, 165 A. 698. The defendant in

his brief says, "The case is quite analogous to *Morgenstern v. Sheer,* 145 Md. 208, 125 A. 790." There (page 219 of 145 Md., 125 A. 794) "the plaintiff entered the building through what he, and other witnesses not familiar with the building, took to be the main entrance, and followed the hallway, in which there was, according to his testimony, sufficient light to enable him to see ten or twelve feet ahead of him, looking for steps or an elevator to the upper floors until he fell into the unprotected elevator shaft." The plaintiff entered the building for the purpose of going to the fourth floor to see tenants, who had asked him the day before the accident to work for them. "The defendants maintained two entrances, and if one was intended as a freight entrance only, was dangerous and likely to be mistaken for the proper entrance, it was the duty of the defendants to warn persons against its use." The difference in the situation there disclosed and that here presented is so clear that that case loses its force as a precedent here.

More nearly akin in its facts is the case of *Hyde v. Blumenthal,* 136 Md. 445, 110 A. 862, 864, which this court, in *Morgenstern v. Sheer,* distinguished by saying: "There the injured party, instead of entering the building through the entrance intended for the use of the public and with which he was familiar, elected to use an entrance not intended for his use, and with which he was not familiar, and to proceed along a hallway that was so dark that he was not certain he could see his hand before his face." In the former case it was stated that "Moran (the one injured) was certainly not expressly invited or authorized to enter the building by the rear entrance, and there was nothing to justify him in assuming that it was intended for public use." See, also, *Steinwedel v. Hilbert,* 149 Md. 128, 131 A. 44. The plaintiff in *Benson v. Balto. Traction Co.,* 77 Md. 535, 26 A. 973, was one of a group of students who went to the defendant's power house to view and examine the works and machinery, and, while so engaged, fell into a vat of boiling water located in a part of the building which was insufficiently lighted. In holding that the plaintiff and his companions were bare

licensees, there for their own convenience or pleasure, this court drew the distinction between them and those expressly invited or induced by the active conduct of the defendant to go upon the premises, or customers and others who go there on business with the occupier.

When the plaintiff entered the office of the defendant he was within his rights, and there entitled to all the protection and safeguards of an invitee; but when he found no one there and went through the office, across the yard and into the factory, did he take his invitee's protection along with him? 45 *Corpus Juris*, 830, says: "The duty to keep premises safe for invitees does not necessarily apply to the entire premises. It extends to all portions of the premises which are included within the invitation and which it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended and at which his presence should therefore reasonably be anticipated, or to which he is allowed to go. But there is no duty with respect to the safety of other portions of the premises, which are not intended for the use of the invitee and where he is not invited and should not reasonably be expected to go, because the invitee becomes a bare licensee if he goes for purposes of his own to some part of the premises other than that to which he was invited." *Linton v. Baltimore Mfg. Co.,* 109 Md. 404, 72 A. 602; *Hyde v. Blumenthal,* 136 Md. 445, 110 A. 862.

When the plaintiff wandered into the factory of the defendant, he was a bare licensee, intruder, or volunteer, to whom the defendant, under the circumstances, owed no duty of protection, and he has no right to recover unless, as he contends, the proximate cause of his injury was the failure of the defendant to comply with the elevator ordinance of the City of Baltimore, the parts of which offered in evidence are as follows: Paragraph 26. "Freight enclosure doors may be made to hinge or slide up and down, or have semi-automatic gates not less than five feet high; but where hinged gates are used, there must be also a hinged guard rail inside, next to elevator shaft." Paragraph 45. "In all cases

the guards or gates of any elevator shall be kept closed when the elevator is not in actual use, under penalty of $25.00 fine."

With regard to the legal effect of such ordinances it is said in *Hopper, McGaw & Co. v. Kelly,* 145 Md. 169, 125 A. 779, 781: "In the case of *Gittings v. Schenuit,* 122 Md. 285, 90 A. 51, 52, Chief Judge Boyd cited a number of authorities in support of his statement "that the mere violation of an ordinance or statute by a defendant will not of itself support an action for injuries sustained, but that it must be shown that the act which constituted the breach of the ordinance or statute was the proximate cause of the accident'." The case of *State, use of Potter, v. Longeley,* 161 Md. 563, 569, 158 A. 6, 8, was the case of a boy who was drowned in an abandoned quarry, founded on the alleged failure of the defendant to adequately fence the quarry, as required by a city ordinance. It was there held that before a right of action "can arise, it must be shown, at least: (1) That the violation of the ordinance was the proximate cause of the injury. (2) That the person injured, at the time of the injury, had the right to be on the property of defendant and was not a trespasser." Continuing, it was there said, in the opinion of Judge Adkins: "The ordinance in this case was passed for the benefit of the public. Any violation of it subjects the owner of a quarry to a fine. But, before an individual can hold such owner liable for an injury alleged to have resulted from such violation, there must be shown a right on the part of the plaintiff, a duty on the part of the defendant with respect to that right, and a breach of that duty by the defendant whereby the plaintiff has suffered injury. *Maenner v. Carroll* (46 Md. 212), *supra.* A trespasser can acquire no such right except in case of willful injury. The mere violation of a statute would not give it. The effect of such violation is only to raise a presumption of negligence in favor of one entitled to assert it." The mere passage of an ordinance does not create the liability, and it is not intended to have such effect.

The plaintiff went into the factory building of his own volition, not in response to any invitation, express or implied, of the defendant, but in the pursuit of his employer's business, and on this theory he was paid compensation by the employer's insurer. The proximate cause of the injury was his voluntary act, and not the failure of the defendant to comply with the city ordinance. If both elevator gates had been down, his course would have been blocked and he would have been saved from injury, but it was his unwarranted act that set the thing in motion; his going from the part of the premises where his business properly took him, to a place where his presence could not have been anticipated by the defendant and where he would not reasonably be expected to go. What he did, and not what the defendant did not do, was the proximate cause of the plaintiff's injuries, and the prayer for a directed verdict should have been granted. *Monumental Motors Tours v. Becker,* 165 Md. 32, 106 A. 434, 435.

*Judgment reversed, with costs.*