GLAZE *v.* BENSON, Individually and Trading as Mago Vista

[No. 143, October Term, 1953.]

*Decided June 23, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Michael Paul Smith* and *Sol. C. Berenholtz,* with whom was *Albert J. Goodman,* on the brief, for appellants.

*Clater W. Smith,* with whom were *Roszel C. Thomsen* and *Clark, Thomsen and Smith,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, a young man of twenty, was made a helpless invalid for life when he dove into shallow water from the rail of a dining pavilion at the beach resort of the appellee. At the trial of his suit for damages, filed by his mother as next friend and by her in her own right, the court directed a verdict at the end of the plaintiff's case on the ground that there had been no showing of primary negligence. The plaintiff appeals from the judgment on the verdict and, with vigor, challenges the correctness of the trial court's action. To further clarity, we shall throughout refer to the infant plaintiff below as the appellant.

It is agreed that at the time of the injury the appellee owned and operated for profit a public beach on the Magothy River, known as Mago Vista, and that the appellant was there as a paying patron. The declaration alleged that the appellee failed to maintain improvements and facilities in a reasonably safe condition, that he failed to warn patrons of hidden perils known to him but unknown to and, in the exercise of due care, undiscoverable by, the appellant, and that by the erection

of a misleading sign, in effect, he invited the appellant to dive to disaster as and where he did. The argument in this Court is that the evidence shows negligence in failing to post a warning of shallow water at the point of the dive and in posting one so placed and worded as to justify an inference that the water was deep at that point. There is now no claim that the facilities were not in reasonably safe condition for the customary use for which they were intended.

Mago Vista is entered through an admission gate in a fence which encloses the area of shore and water which comprise it. Just about opposite the gate at the water is the dining pavilion, a frame, roofed over pier, forty feet wide by one hundred seventy-three feet long, one hundred forty feet of this length being over the water. On the pavilion are five length-wise rows of tables, twenty-five in a row. A railing about waist high—a metal grille between wooden top and bottom rails—runs all around the sides of the pavilion. The distance between the top of the railing and the outside overhang of the roof is approximately the same as the height of the railing. Rafters which support the roof stand at regular intervals along the rail. There are no ladders or other means of access between the pavilion and the water, and no platforms, diving boards or other aids to diving.

In the twenty-five years of its operation, no one else has dived from the dining pavilion. Some years ago, when the arrangements for admission to the beach were different, children had been known to climb over the side of the pavilion in order to avoid paying the bathing fee.

As one faces the water from the entrance gate, there is an area beginning at the left side of the pavilion which is fenced in, both at the shore and in the water several hundred feet from shore. This is known as the safe area and a sign at the gate, through which it is entered, reads "Safe". The appellee described the area as one where it would be safe to go with the family or to play

with children, and said that the sign meant to indicate shallow water. A chart filed as an exhibit giving depths at mean low water, shows that at no place within the area is water over 2.1 feet deep. Again, as one faces the water, there is seen the shore end of an uncovered frame swimming and diving pier forty-seven feet to the right of the shore end of the dining pavilion. The distance between the water end of the pier and the water end of the pavilion is eighty-four feet. The platform at the end of the pier is over deep water, which varies at mean low water from 4.5 feet to 11.8 feet. There are three ladders leading from the platform to the water to enable swimmers to return to the platform after diving. There are two spring diving boards on the platform and a high diving tower with two extensions for diving, one at eight feet above the platform and another at sixteen feet above.

On the day of the accident, the appellant, planning to meet a young lady and her grandmother, had driven his mother and sister to Mago Vista. The grandmother had already secured a table on the dining pavilion. After the families had met and greeted, the sister, the young lady and the appellant changed into bathing suits and went swimming in the safe area, where they remained for about an hour. The table on the dining pavilion which they were using was to the left of the center, as one faces the water, and towards the water end of the building. At one point during the bathing, the appellant's mother handed him a movie camera from the pavilion as he stood in the water near their table. After they finished swimming, they came back to the table and the girls had something to eat. The appellant did not feel like eating but wanted to swim. They talked of going over to the swimming pier so that they could dive but the girls were not ready to go.

The appellant got up suddenly and walked to the water end of the pavilion, stepped on a bench and from the bench to the top of the railing, and then dove in, taking a regular dive, not a flat dive. He testified that

he thought the water was deep at the end of the pavilion because (a) he had seen a sign halfway between the water end of the pavilion and the swimming pier which read, according to the testimony of the appellee "Danger", and according to the testimony of the witnesses for the appellant "Deep Water, Swimmers Only"; (b) he could not see bottom as he looked down, the water being muddy; (c) he heard the water swishing against the piers which supported the pavilion; and (d) the fence which enclosed the safe area terminated at the left side of the pavilion, which was some fifteen or twenty feet to his left.

The appellant had finished the tenth grade at school and had then gone to sea as a worker in the engine room of ships. He had passed examinations which qualified him for duties as fireman, oiler and watertender, and had taken courses at Sheeps Head Bay Maritime School in marine engineering, diesel and steam, with the aim of becoming an engineer officer. He had been swimming and diving regularly since he was six years old and was good at both. He had swum in every one of the seven seas.

The appellant says, as is true, that in passing on the correctness of the directed verdict, these facts, and the inferences reasonably to be drawn from them, must be considered in the light most favorable to him. So read, he argues that there are enough to permit reasonable minds to differ as to whether the appellee had done that which he should not have done or failed to do that which he should have done, and so present a question for the jury as to whether his actions or omissions were a proximate cause of the injury suffered by the appellant. The applicable law is clear. A possessor of land is liable for harm caused to inivtees by a condition of which he is aware, or which in the exercise of due care, should have been aware, and which (a) he should realize involves an unreasonable risk to them; and (b) he has no reason to believe that they will discover or realize the risk involved, unless he exercises

reasonable care, either to make the condition reasonably safe or to give a warning adequate to enable the invitees to avoid the harm. *Restatement, Torts,* Sec. 343; *Yaniger v. Calvert Bldg. & Con. Co.,* 183 Md. 285. There, the Court said, referring to the rule of the Restatement: ". . . it is to be noted that the comparative knowledge of the parties is the test of liability,—that is to say, the knowledge of the defendant as opposed to the knowledge of the person injured." Two conditions must concur, if the possessor of the land is to be held liable: (1) a realization that the condition constitutes an unreasonable risk to the patron; and (2) the absence of reason to believe that the condition will be discovered by the patron or the risk realized by him. As to the first of these tests, the evidence shows that the appellee had set apart at one place a shallow area for safe bathing, and at another point, a deep area for diving and swimming. In between, he had built the pavilion for the use of those wishing to rest and eat. Signs directed patrons to the shallow area and to the deep area and advised the character of each. The dining pavilion needed no sign for a realization and understanding of its purpose and use. It was designed, intended and used solely as a dining pavilion. There was nothing in its arrangement or facilities to suggest that it was to be used in connection with swimming or diving. There were no diving boards, platforms or other thing to facilitate diving or the entering of the water in any manner and there were no ladders or other means of getting from the water to the pavilion. To get into a position to dive, one had to step on a bench, then upon a narrow rail. To then dive, there would be the necessity of clearing the overhang of the roof, which is about the same distance from the rail as its top is from the floor. This arrangement in itself was a negation of the idea that the pavilion was intended for diving or that anyone would attempt to dive from it. The bare possibility that one could dive from the pavilion does not necessarily make it an unreasonable risk to patrons, even in the

absence of a warning sign that diving should not be indulged in. *Pinehurst Co. v. Phelps,* 163 Md. 68. The courts have held that an operator of a place of amusement, to which the public is invited, discharges his obligation if he maintains his facilities in a reasonably safe condition for the purposes for which they are apparently designed and for which they are adapted. *Carlin v. Krout,* 142 Md. 140; *Johnson v. Hot Springs Land & Improvement Co.* (Ore.) 148 P. 1137; and *Stungis v. Wavecreast Realty Co.* (Neb.) 248 N. W. 78. In the last case, a patron dove from a waterwheel which previously he had been using in the manner for which it was intended and was injured because of the shallowness of the water. It was held that the exercise of reasonable care would not require the posting of a sign prohibiting diving or advising of the shallowness of the water. In *Grove v. D'Allessandro* (Wash.) 235 P. 2d 826, where the Court found on all of the facts that the matter was a jury question, it nevertheless said: ". . . it is true . . . that a resort owner does not in the exercise of reasonable care have to post a warning sign on every pier, waterwheel, slide, or other juncture off which someone might jump."

In testing whether the appellee had reason to believe that a patron would not realize the risk of diving from the pavilion, it is to be remembered that he was entitled to assume that patrons would act as reasonable men act. *Restatement, Torts,* Sec. 289. As it is there suggested, the appellee could assume that his patrons would possess such perception of the surrounding circumstances as a reasonable man would have, that they would possess such knowledge of other pertinent matters as a reasonable man would have, and that they would correlate such perception and knowledge with reasonable intelligence and judgment so as to infer the nature of the dining pavilion and the risk of diving from it. The patron who met the standards would see the shallow water immediately to the left of the dining pavilion and deep water some eighty feet to its right. He would

perceive a sign warning of deep water forty feet to the right. The deduction naturally to be drawn from these facts would lead reasonably to the conclusion that the water increased in depth from left to right and not to belief firm enough on which to base irrevocable action that the water at the end of the dining pavilion was deep. Particularly is this true in the light of the apparent nature and obvious use of the dining pavilion and its design and arrangement, which compelled considerable determination and agility, if one were to dive at all. All of this not only did not invite a conclusion that the pavilion was to be used for diving and swimming but negated such a conclusion. To say that the sign facing the shore could reasonably have been foreseen to constitute an invitation to dive into water sixty or sixty-five feet from it, would, we think, be stretching foreseeability beyond reason. Cf. *Baltimore v. Terio,* 147 Md. 330; and *Lindenberg v. Needles,* 203 Md. 8, 97 A. 2d 901.

That the appellee is entitled to rely on the reasonable man standard in evaluating the probabilities of the conduct of patrons, can give the appellant no fair or just cause to complain. Physically and mentally he was fully equipped, as he was from experience, to meet that standard. He was a good swimmer and diver. He knew that immediately to the left of the pavilion was shallow water. He had stood in that water only some sixty feet from the place where he dove. He says, too, that he knew that the water was shallow at the end of the pavilion some twenty or twenty-five feet to the left of where he dove. He knew, too, that a place was provided at the resort for diving, where the water, according to the sign he saw, was certainly deep because he had discussed with the girls going over to the swimming pier in order to dive, and this, indeed, was his purpose when he took off from the dining pavilion. He knew, too, that the dining pavilion was intended for resting and eating.

The appellant says that the absence of a warning sign on the dining pavilion and the existence of the deep

water sign forty feet to its right, impose liability on the appellee because they constitute an implied invitation to a patron to dive from the pavilion with the justifiable expectation of finding deep water beneath it, and the appellee had no reason to believe that a patron would realize that the water was not deep. An invitation involves the existence of an intent to induce others to act responsively. *State, use of Alston v. Baltimore Fidelity Warehouse Co.,* 176 Md. 341, 347. An invitation may be implied from environment and the apparent nature of facilities in it, and the appellant relies on cases which have so held—*Waddel v. Brashear* (Ky.) 78 S. W. 2d 31; *Lake Brady Co. v. Krutel* (Ohio) 176 N. E. 226; and *Grove v. D'Allessandro* (Wash.) *supra.* In each of the cases, a patron of an amusement resort was injured when he used a facility for the purpose for which it was intended, but used a portion of the facility not intended to be used or used it in an improper manner. In each case, the Court held that reasonable minds could differ as to whether the nature and arrangement of the facility was or was not an implied invitation to use it in the manner by which it was used by the injured person. They held, in other words, that there was sufficient correspondence between the use actually made of the facility and the use for which it was designed and intended to permit a jury to find an invitation to use it as it was used.

We think that the cases are distinguishable on the facts. Here, as in the Nebraska case of *Stungis v. Wavecrest Realty Co., supra,* the facility used was designed and adapted for a purpose foreign to the use to which it was put. We think that no invitation to dive from the dining pavilion can be fairly or reasonably inferred and that the appellee cannot be charged reasonably with realization that an invitation would be assumed by some patron. We find that no act or omission of the appellee was the proximate cause of the tragic injury suffered by the appellant and that in a system of law, in which fault is a prerequisite to liability, the

36

minds of reasonable men would not differ in the holding that the appellee is not liable to the appellant. Our view that there was no primary negligence makes it unnecessary to decide whether the appellant was guilty of contributory negligence, which would bar his recovery as a matter of law.

*Judgments affirmed, with costs.*