**MILLER & LONG CO., Inc., Appellant,**

**v.**

**John SHAW, Jr. and Lizzie Shaw, Appellees.**

**No. 3526.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1964.

Decided Nov. 20, 1964.

its- billing address. Upon arriving there Shaw was directed by a workman on the site to appellant's shack where he was given the information he sought by one of appellant's representatives on the job. As he was preparing to leave the shack, a piece of lumber, described as a 3x4 about 7 feet long pierced the roof near him, causing him to jump backward and to strike his back against a blueprint table, producing the injuries complained of.

Appellant charges that the trial court erred in failing to rule as a matter of law that Shaw was a licensee and in denying its motions for a directed verdict, for a new trial or for judgment *n. o. v.*

As the accident took place in Maryland, Maryland law governs substantive questions, although District of Columbia law controls procedural matters at trial. Capital Transit Company v. Simpson, 98 U.S.App.D.C. 298, 299, 235 F.2d 525, 526 (1956), cert. denied, 352 U.S. 882, 77 S.Ct. 103, 1 L.Ed.2d 81; Hardy v. Hardy, D.C. App., 197 A.2d 923, 925 (1964). Being a substantive question, Shaw's status at the time of his injury and the standard of conduct to be applied to the parties are governed by Maryland law. Machanic v. Storey, 115 U.S.App.D.C. 87, 90, 317 F.2d 151, 154 (1963).

Under Maryland law a licensee is "one privileged to enter another's land by virtue of the possessor's consent, for the licensee's own purposes." An invitee or business visitor is "one invited or permitted to enter or remain upon land for a purpose connected with or related to the business of the occupant." Peregoy v. Western Maryland Ry. Co., 202 Md. 203, 205, 95 A.2d 867, 869 (1953). To a licensee the owner or occupant owes no duty to keep his premises safe or to anticipate his presence or to warn him, and a licensee acquires no right of recovery except in the event of wilful injury. Carroll v. Spencer, 204 Md. 387,

Francis J. Ford, Washington, D. C., with whom Charles E. Channing, Jr., Washington, D. C., was on the brief, for appellant.

Aaron M. Levine, Washington, D. C., for appellees.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

This is an appeal from a judgment on a jury verdict in favor of John Shaw, Jr.,[1] for personal injuries he sustained while on an errand for his employer to a shack maintained by appellant in connection with its work as a subcontractor on a construction site in Maryland.

Prior to the date of the accident on March 26, 1963, appellant on three occasions had purchased parts from Monroe Ford Company on credit, at which times the billing address of appellant had not been obtained. On that date, Shaw, a parts employee for Monroe Ford, was directed by his supervisor to go across the street to the construction site where appellant, together with other contractors, was working and obtain

[1] A jury verdict was also rendered in favor of his wife, a co-plaintiff, for loss of consortium.

391, 104 A.2d 628, 631, 44 A.L.R.2d 1247 (1954). To an invitee, however, the owner or occupant owes a duty of reasonable care to discover and eliminate any danger which might threaten the invitee. Peregoy v. Western Maryland Ry. Co., supra. An invitation to enter connotes the existence of an intent to induce others to act responsively. It may be implied from environment and the apparent nature of the facilities in it. Glaze v. Benson, 205 Md. 26, 31, 106 A.2d 124, 129.

In Gordon Sleeprite Corporation v. Waters, 165 Md. 354, 168 A. 846 (1933), Waters, a bill collector, after finding no one present in defendant's office, went into its factory where he was injured. In holding him to be a licensee while in the factory, the court stated:

"The plaintiff [Waters] went into the factory building of his own volition, not in response to any invitation, express or implied, of the defendant, but in the pursuit of his employer's business, and on this theory he was paid compensation by the employer's insurer." Id. at page 848.

The construction site in the case at bar is closely analogous to the factory in the above-cited case. It was there that the immediate construction activities, with all their inherent dangers and incident risks, were carried on. It was not a place to which creditors or debtors of appellant were solicited to come to adjust and settle accounts, or to receive and pay bills, or where bookkeeping accounts of the corporation were kept and maintained. The shack was essentially make-shift in construction and, presumably, upon completion of the work at this particular site, would be torn down. It was used by the supervisory personnel engaged in appellant's work on this one job. From this temporary shed they handled the details and day-to-day problems which arose in connection with the work there. It was also used to house the blueprints, plans and tools. The environment and recognizable dangers incident to construction activities being carried on were such as to negative any apparent or implied invitation [2] to enter the construction site or the shack to obtain information similar to that requested by Shaw.

Both sides concede that there was no express invitation for Shaw to enter upon the construction site. The mere fact that Shaw's employer directed him on the errand conferred no invitee status. No benefit accrued to appellant through Shaw's visit. There was no evidence that the small purchases on credit were made by any employee of appellant coming from the construction site across the street. Only by guess or surmise, unsupported by testimony, could it be found that the items bought were used on the construction job or had any connection with the work being performed by appellant there. The entry by Shaw was wholly one of convenience for his employer [3] and did not further the business of appellant. There was, therefore, a complete absence of a factual basis from which to reasonably infer an implied invitation to Shaw to come onto the site or into appellant's temporary shack.

■ Shaw argued that when appellant's supervisor acquiesced in his presence in

2. "The invitation test * * * bases 'invitation' on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe 'that [the premises] were intended to be used by visitors' for the purpose which this entrant was pursuing, 'and that such use was not only acquiesced in by the owner [or possessor], but that it was in accordance with the intention and design with which the way or place was adapted and prepared. * * *' Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety." 2 Harper & James, Law of Torts, § 27.12, pp. 1479–80.

3. Shaw received the benefits of the local workmen's compensation law for injury arising out of and in the course of his employment.

the shack by furnishing the desired business address of appellant, his status became that of an invitee. Under Maryland law, acquiescence in permitting persons upon the premises is not tantamount to an invitation. Burke v. Maryland D. & V. Ry. Co., 134 Md. 156, 158, 106 A. 353, 355 (1919). That Shaw was given the courtesy of a reply to his inquiry about a billing address gave him no better status than that of a licensee to whom the owner owes no greater duty than to a trespasser. Carroll v. Spencer, supra.

 Where facts essential to the determination of a visitor's status are not in dispute, whether he is a licensee or an invitee is a legal question for the court. Lord v. Lencshire House, Ltd., 106 U.S.App.D.C. 328, 331, 272 F.2d 557, 560 (1959). Here the facts surrounding Shaw's presence at the construction site and in appellant's work shack were not in conflict. It was, therefore, the duty of the trial court to determine Shaw's status as a matter of law. The facts in the record established that Shaw's status at best was no more than that of a licensee.

 Shaw relied at trial upon the doctrine of *res ipsa loquitur* to establish a prima facie case of negligence. The trial court submitted the case to the jury under an instruction as to its applicability. *Res ipsa loquitur*, being a rule of evidence, is procedural and is governed by the law of the District of Columbia. Hutchins v. Rock Creek Ginger Ale Co., D.C.App., 194 A.2d 305, 306 (1963). While the doctrine will permit an inference of ordinary negligence, it cannot be applied to establish a basis for proof of wilful, wanton or malicious negligence. No proof was offered of any specific acts or omissions by appellant causing wilful injury. As we have held Shaw was a licensee, not an invitee, to sustain a recovery he should have proved wilful, wanton or malicious conduct causing injury to him. Duff v. United States, 171 F.2d 846, 850 (4th Cir.1949); 38 Am.Jur. Negligence § 308 at page 1006. Mere proof of the happening of the accident under the circumstances of this case was not sufficient to allow appellees' case to go to the jury.

We hold that appellant was entitled to a directed verdict at the conclusion of the testimony and the judgment below based upon the jury verdict must be reversed.

Reversed with directions to enter judgment for Miller & Long Co., Inc.

HOOD, Chief Judge (dissenting):

I cannot agree with the majority opinion that Shaw was a mere licensee when he entered the Miller & Long Co. office on the construction site. The record, though deficient in some details, establishes by fair and reasonable inference the following factual background. Miller & Long Co. was engaged in construction work on a site across the street from Monroe Ford Company. On the construction site Miller & Long had an office. Whether it be called a construction shack or a field office is not material; it was the control center of Miller & Long's work on the site. As Miller & Long's work progressed, on three different occasions an employee of Miller & Long was sent across the street to make small purchases on credit from Monroe Ford. Thus a business relationship was established between Miller & Long and Monroe Ford. Naturally, there came a time when Monroe Ford wished to be paid. Miller & Long's employee, when making the purchases, had given no instructions as to billing for payment. On the occasion in question, Monroe Ford sent its employee Shaw across the street to obtain the required information. He went to Miller & Long's office and obtained the information, but was injured before he left.

Shaw did not go to the office "for his own pleasure or convenience," or that of his employer. He went there in connection with an unfinished business transaction between his employer and Miller & Long. He was there "for a purpose connected with

or related to the business" of Miller & Long. Peregoy v. Western Maryland Ry. Co., 202 Md. 203, 95 A.2d 867, 869 (1953). He was therefore an invitee. The bookkeeping department of Miller & Long was not located in the construction office, and its purchasing department was not located there. But from that office a Miller & Long employee had been sent across the street to buy on credit from Monroe Ford. Monroe Ford was impliedly invited to send its employee across the street to Miller & Long's office to find out how payment was to be obtained. Shaw was in the office of Miller & Long in connection with an unfinished business transaction originating from that office. He was not a mere licensee.

As the majority opinion does not reach the question of res ipsa loquitur, neither do I.