636 A.2d 22

## HOWARD COUNTY BOARD OF EDUCATION

v.

**Leland R. CHEYNE, et al.**

**No. 522, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 27, 1994.

Certiorari Denied June 6, 1994.

152

J. Michael Sloneker, argued (M. Bradley Hallwig, Jill R. Leiner and Anderson, Coe & King, on the brief), Baltimore, for appellant.

Robert B. Williams, argued (Williams and Hanson, on the brief), Ellicott City, for appellees.

Argued before BLOOM, DAVIS and MOTZ, JJ.

DAVIS, Judge.

Appellees, Leland Cheyne and Cathy Cheyne, initiated suit in the Circuit Court for Howard County against the Howard County Board of Education (Board) (appellant herein), Howard County, the Howard County Department of Parks and Recreation (Department of Recreation), and the Nissan Corporation. The dispute arose from injuries suffered by Tiffany Cheyne, appellees' four-year-old daughter, while on the premises of the West Friendship Elementary School. Howard County, the Department of Recreation, and Nissan were each dismissed from the case. At the close of all evidence, the trial judge ruled as a matter of law that Tiffany Cheyne was an invitee of the Board throughout the entire time she was on the school premises. On September 11, 1992 a verdict was rendered against the Board. Final judgment was entered January 8, 1993. The Board filed a timely notice of appeal and raised the following questions for our review:

I.  Whether the trial court erred in denying [appellant's] motion for judgment at the conclusion of all the evidence and finding as a matter of law that Tiffany Cheyne was an invitee and instructing the jury based on this finding where there was no legally sufficient evidence to support a finding that Tiffany Cheyne was an invitee.

II. Whether the trial court erred in ruling that Tiffany Cheyne was an invitee at all times while at the school and failing to instruct the jury on the law with respect to exceeding the scope of an invitation and trespass to chattels when the evidence supported such instructions.

## FACTS

The Education Article of the Maryland Annotated Code (ED), § 7–108 (1992), provides that "[e]ach county board shall encourage the use of public school facilities for community purposes." Consistent with this legislation, the Board adopted a policy to encourage the use of its facilities, including the West Friendship gymnasium, by community organizations. *The Howard County Public School Sys. Policy, Use of School*

*Facilities by Nonschool Groups* (hereinafter Facilities Policy), no. 11111.1. The public school policy contained detailed procedures for gaining permission to use school facilities, a schedule of charges, and a list of standards that users must follow. The Department of Recreation is not charged a fee for use of school facilities, pursuant to an agreement with the Board. On November 23, 1987 the Board granted permission for the Department of Recreation to use the West Friendship school gymnasium to conduct a basketball league on Saturdays from January 9, 1988 through March 26, 1988.

On February 6, 1988 Tiffany Cheyne went to the West Friendship gymnasium with her mother and father to watch her brother participate in a basketball league organized by the Department of Recreation. The program was designed for children between the ages of six and seven years old. Mr. Cheyne was a volunteer coach for the basketball league. Arriving at approximately 10:00 a.m., the family watched a scrimmage that ended at approximately 11:30 a.m. The Cheynes stayed after the scrimmage, and Mrs. Cheyne shot baskets with Tiffany, who would apparently retrieve the ball for her. According to the testimony of Mr. and Mrs. Cheyne, by this time all of the participants and spectators had left with the exception of the Cheynes and one other family. While retrieving a ball, Tiffany allegedly rolled over the ball and her face struck a piece of exercise equipment known as the "phys-educator," which was in its folded position and resembled a ladder leaning against a wall. The evidence revealed that two lower hinges were broken, resulting in the projection of two metal bars that should properly be flush with the outer edges of the phys-educator. There was contradictory evidence at trial, from a treating physician, that possibly Tiffany was injured when she fell from a ladder. Tiffany's severe injury resulted in removal of her right eye.

The Board moved for judgment in its favor at the close of appellees' case and, at the conclusion of all the evidence, argued that Tiffany was at most a licensee and therefore the Board had not breached a duty owed. Ultimately, the court

ruled as a matter of law that Tiffany was an invitee and that she remained so throughout the time she was at the school.

## LEGAL ANALYSIS

### General Principles

We are asked to determine the legal status of a four-year-old child on the premises of a public school to attend a sports function sponsored, not by the individual school or the Board of Education, but by the Department of Recreation. This precise issue is one of first impression in this State. Nonetheless, we have found sufficient guidance in our case law to conclude that Tiffany was an invitee of the Board when she entered the school gymnasium and that the determination of whether she maintained this status was a question of fact for the jury.

Maryland law maintains the common law classifications of invitee, licensee, and trespasser. *Rowley v. Mayor of Baltimore*, 305 Md. 456, 464, 505 A.2d 494 (1986); *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265 (1972). *See also Casper v. Charles F. Smith & Son, Inc.*, 316 Md. 573, 584 n. 8, 560 A.2d 1130 (1989) (questioning the usefulness of distinct standards of care for a licensee and invitee). An invitee is, in general, a person invited or permitted to enter or remain on one's property for purposes connected with or related to the possessor's business. A licensee is one who enters property with the possessor's knowledge and consent but for his own purpose or interest. *Bramble*, 264 Md. at 521, 287 A.2d 265.

Invitee status can be established under two doctrines: (1) mutual benefit or (2) implied invitation. The mutual benefit theory is typified by the person who enters a business establishment to purchase goods or services. This theory places great weight on the subjective intent of the plaintiff. The court must inquire: Did plaintiff intend to benefit the landowner in some manner? We do not find that

Tiffany was an invitee under the mutual benefit doctrine because there is no evidence of a mutual benefit.[1]

The theory of implied invitation, in comparison, is objective and does not rely on any mutual benefit; it gains its vitality from such circumstances as custom, the habitual acquiescence of an owner, the apparent holding out of premises for a particular use by the public, or the general arrangement or design of the premises. *Crown Cork and Seal Co. v. Kane*, 213 Md. 152, 159, 131 A.2d 470 (1957). The crux of the implied invitation theory is the distinction between mere acquiescence and direct or implied inducement. *Id.*

*Kane* is the seminal Maryland case on implied invitation. In that case, Kane, a truck driver, while waiting for his truck to be loaded, left the docking area and proceeded to a smoking room in Crown's basement. Since no smoking was permitted in the docking area, Kane, like numerous other truckers, habitually accessed the smoking room during their wait. As he was returning from the basement, Kane was struck and injured by a forklift. In reaching its holding—that there was legally sufficient evidence to take the issue of implied invitation to the jury—the Court explicated and relied upon the growing doctrine of implied invitation. The Court stated that

[t]he gist of [implied invitation] liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not

---

1. This conclusion is supported by other jurisdictions that have examined factually similar circumstances. *See, e.g., Slovin v. Gauger*, 57 Del. 378, 200 A.2d 565, 566–67 (1964); *Britt v. Allen County Community Junior College*, 230 Kan. 502, 638 P.2d 914, 919–20 (1982); *Smith v. Board of Educ.*, 204 Kan. 580, 464 P.2d 571, 576–77 (1970); *Gruhalla v. George Moeller Constr. Co.*, 391 S.W.2d 585, 592 (Mo.Ct.App.1965); *Turpin v. Our Lady of Mercy Catholic Church*, 20 N.C.App. 580, 202 S.E.2d 351, 352 (1974); *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 502 N.E.2d 611, 613 (1986).

only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used. [Citations omitted.]
*Id.* at 160, 131 A.2d 470 quoting *Kalus v. Bass,* 122 Md. 467, 473, 89 A. 731 (1914).

Based on this rationale, the Court found that the facts that the room was set aside for smoking, that its location was made known to the plaintiff by Crown employees on two prior occasions, that the room was habitually used by truckers, that this use was known by the foreman, and the absence of any notice to plaintiff that the room was solely for employees led to the conclusion that there was legally sufficient evidence to instruct the jury on implied invitation. *Kane,* 213 Md. at 162, 131 A.2d 470.

More recently, in *Doehring v. Wagner,* 80 Md.App. 237, 244, 562 A.2d 762 (1989), and *Woodward v. Newstein,* 37 Md.App. 285, 293, 377 A.2d 535 (1977), we have discussed *Kane's* explication in view of the *Restatement (Second) of Torts* § 332 comment c (1965), (hereinafter *Restatement* ), *"Factors important in determining invitation,"* which states that "the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor."

Tiffany's status *vis-à-vis* the Department of Recreation is not raised in this appeal, but we may reasonably assume, *arguendo,* that she was an invitee of the Department of Recreation. Tiffany's relationship to the Board can follow two lineages: (1) through the Department of Recreation or (2) directly to the Board. Whichever lineage is followed, Tiffany was an invitee.

## I.

### A. Tiffany was an invitee of the Department of Recreation, which was an invitee of the Board of Education

The Education Article mandates that the Board shall encourage the use of its schools for community purposes,

including recreational purposes, and that such meetings shall be open to the public. ED § 7–108(a), (b). The Howard County public school facilities policies are consistent with and further the State policy. Facilities Policy number 11111.1 states, in pertinent part, that

> [t]he use of public school facilities for community purposes is encouraged by the Board of Education of Howard County and is in accordance with the Public School Laws of Maryland.
>
> ... All nonschool activities must be open to the public and cannot discriminate on the basis of location of residence within Howard County.
>
> The use of these facilities shall be available by application in the prescribed manner. Organizations may be charged a user fee. [Emphasis added.]

Facilities Policy number 11111.2 states as "Background" that Maryland Public School Laws state "each county board shall encourage the use of public school facilities for community purposes." The belief that these facilities should be utilized to their optimum is held by the Board of Education of Howard County. Through this maximum and efficient use, the taxpayer will receive the greatest return.

Appellant argues that the Board merely acquiesced in or permitted the use of the school facilities by the Department of Recreation without inducing or encouraging that department to use its premises. Appellant is correct that mere acquiescence or mere permission will not create an invitee status. The facts of the case *sub judice* are distinguishable, however, from those cases demonstrating mere acquiescence or mere permission.

In the leading Maryland example of mere acquiescence, *Carroll v. Spencer,* 204 Md. 387, 104 A.2d 628 (1954), an eight-year-old boy was injured when he wandered into a partially built house and fell through a hole in the floor. Prior to entering the house, the boy called out to the foreman, who looked at the boy but did not respond. The Court held that the foreman's actions at most constituted an acquiescence that

could not transform the boy's status from trespasser to invitee. *Id.* at 393, 104 A.2d 628.

Although no Maryland cases specifically address the issue of permission, *Restatement* § 332 comment b, *"Invitation and permission,"* makes the following distinctions:

> An invitation differs from mere permission in this: an *invitation* is conduct which justifies others in believing that the possessor *desires* them to enter the land; *permission* is conduct justifying others in believing that the possessor is *willing* that they shall enter if they desire to do so. *Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is desired may be sufficient for the invitation.* [Emphasis added.]

It is not altogether clear why comment b focuses on the distinction between desire and willingness and comment c, *supra,* uses the two terms as synonyms. Nonetheless, we think that the lucid point made by the *Restatement* is that the possessor's actions must be more than passive acceptance; there must be some form of inducement or encouragement.

In the instant case, the record evidences a deliberate policy of encouraging the nonschool use of the facilities to fulfill the desires of the Board, *i.e.,* to maximize the use of its property and benefit the community. We do not agree with appellant's contention that a policy of encouragement is akin to willingness and not desire. To encourage an activity is to stimulate its occurrence, and that is exactly what the policy did—it stimulated the Department of Recreation and other groups to use the school facilities.

Moreover, we do not find that the Board's desire was vitiated by the act of granting permission. Permission does not preclude a finding that other words or conduct implied an invitation. In *Kane,* there was evidence that a Crown employee had previously granted Kane permission to use the smoking room, and it was this very permission along with other conduct that resulted in an implied invitation. In the case *sub judice,* permission was a necessary formality to implement the policy of encouraging, without discrimination, broad-based use

and access to school facilities by the community. In addition to the Board's express policy, there was evidence of circumstances including the customary use of school facilities by the Department of Recreation and habitual permission granted by the Board.

We find guidance in a similar case from another jurisdiction addressing the issue of public invitation, which is essentially a subcategory of *Kane*'s implied invitation.[2] In *McKinnon v. Washington Fed. Sav. and Loan Ass'n*, 68 Wash.2d 644, 414 P.2d 773 (1966), a bank celebrating its grand opening held an open house and displayed inside its premises a 4 by 8 feet sign that read:

> This room and adjoining kitchen facilities are available for the free use of local clubs and organized groups for meetings and conferences, either during regular office hours or in the evenings. Arrangements can be made in advance by contacting any one of the staff members. Courtesy of Washington Federal Savings.

*Id.* 414 P.2d at 774.

Among those organizations that took advantage of the offer was the local Girl Scout Troop (Scouts). It was common practice for the Scouts to enter and exit through a back door. One evening an adult leader was approaching the back door to enter when her left foot struck a sprinkler head that was alongside the sidewalk. The *McKinnon* court, relying on the *Restatement*'s Public Invitee status, held that the sign was an invitation to "a segment of the public" by the bank to use its building for group meetings, and the Scout leader was an invitee as a matter of law. *Id.* 414 P.2d at 777–78.

The sign in *McKinnon* was an invitation to local clubs and organized groups. The Facilities Policy adopted by Howard

---

**2.** As we will discuss, the great majority of factually similar cases that have been reported in other jurisdictions are not persuasive or even instructive because they have limited their scope of invitation analysis to business invitees and have demanded a finding of mutual benefit. This restrictive reading has been eschewed by Maryland, the *Restatement,* and numerous jurisdictions.

County was an invitation directed to any community group, including the Department of Recreation, that might want to make use of the school facilities. Although the *McKinnon* court did not address the issue of permission, it would be unreasonable to believe that the bank had committed its facilities to all groups for all purposes. The Board's invitation was no more contingent upon approval than was the bank's. What was important in *McKinnon* was that the policy enunciated in the sign created a reasonable expectation that the public was invited and that the premises were made safe for the purpose for which they were held open. *A fortiori,* the Facilities Policy did more than enunciate that facilities were "available"—the policy encouraged and induced the Department of Recreation to use school facilities and created a reasonable expectation that the Board had adequately prepared for the safety of those participating in the Department of Recreation's activities at the school.

## B. Tiffany Was a Public Invitee

Even if the Department of Recreation had not been an invitee of the Board, Tiffany would nonetheless have been a public invitee of the Board because the Board encouraged community groups to use school facilities, mandated public access to nonschool events, and created an apparent holding out of the premises for public access.

The notion that members of the public can enjoy invitee status if the landowner acts in some way to encourage the public to access his land was only generally discussed in *Kane,* 213 Md. at 159, 131 A.2d 470. Eight years after *Kane* was decided, the *Restatement (Second) of Torts* § 332 was published. It enunciated a two-part classification of invitees: (1) public invitees and (2) business visitors.[3] The *Restatement* defines a public invitee as "a person who is invited to enter or remain on land as a member of the public for a purpose for

---

3. "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." *Restatement* § 332.

which the land is held open to the public." *Restatement* § 332. This definition is consistent with *Kane*'s implied invitation that can arise from "the apparent holding out of premises to a particular use by the public...." *Kane*, 213 Md. at 159, 131 A.2d 470. The *Restatement* emphasizes the "purpose" element of the invitation. It is immaterial that an admission fee is not paid, or that the landowner is not mindful of a business purpose, or that the visitor's presence will lead to no possibility of benefit to the landowner, pecuniary or otherwise. It is essential, however, that the visitor is on the premises for the purpose for which the land is held open to the public. Thus, the *Restatement* illustrates that a visitor is an invitee at the free public library when she enters to read a book, but not when she enters to meet a friend or to get out of the rain. *Restatement* § 332 comment d, illustration 2.

In addition to purpose, the *Restatement* § 332 comment d emphasizes the need for inducement or encouragement as in other instances of invitation. Thus, "the desire or willingness to receive that person which a reasonable man would understand as expressed by words or other conduct of the possessor" remains an important factor. *Doehring*, 80 Md.App. at 244, 562 A.2d 762, quoting *Restatement* § 332 comment c; *Woodward*, 37 Md.App. at 293, 377 A.2d 535, quoting *Restatement* § 332 comment c. Moreover,

> [i]t is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness. The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public, or classes or members of it, a willingness or unwillingness to receive them.

*Restatement* § 332 comment c.

Recently the Court of Appeals tangentially addressed a public invitation in *Casper*, 316 Md. at 579, 560 A.2d 1130. The Court stated that a visitor on portions of designated parks

to which entry is not prohibited is entitled to the status of an invitee.

The Board's written policy expressed a willingness and a desire for community groups to use its facilities, and this would certainly include family members who would transport their children to community events and watch their children participate. Even if the Board denies its desire to have community groups use its facilities, the Board's conduct of permitting the public to use school premises, without any indication that the school was not preparing for their reasonable safety, created the reasonable expectation that the school gymnasium, which is typically used for sporting events, was prepared for the public's reasonable safety.

Maryland case law demonstrates the importance of reasonable expectations created by particular circumstances as well as the possessor's failure to obviate those expectations. In *Kane*, 213 Md. at 162, 131 A.2d 470, the fact that truckers habitually used the smoking room and that nothing was done to counter the obvious impression created—that the smoking room was open to truckers—was crucial to the Court's ruling. Similarly in *Hutzler Bros. v. Taylor*, 247 Md. 228, 236–37, 230 A.2d 663 (1967), the location and design of the parking garage was found to create the reasonable expectation that the public could park in the garage and that measures had been taken to assure their safety even though not all who parked in the garage would necessarily shop at the Hutzler store.

The rulings of other jurisdictions are instructive. In *McKinnon*, 414 P.2d at 777–78, the court held that the sign was conduct that invited "a segment of the public" to use its building for group meetings and that the bank had been reasonably prepared for the Scouts' safety. As a result, the Scout leader was an invitee as a matter of law.

The case *sub judice* presents a case that is factually very close to *McKinnon*. The sign in *McKinnon* was an invitation to local clubs and organized groups. The Facilities Policy adopted by Howard County was an invitation directed to any community group, including the Department of Recreation,

that might want to make use of the school facilities. That policy created a reasonable expectation that members of the public who availed themselves of this invitation via the Department of Recreation were impliedly invited and that the premises were made safe for the purpose for which they were held open.

Two New York cases also address this issue. In an early case, *Kelly v. Board of Educ.*, 191 A.D. 251, 180 N.Y.S. 796 (N.Y.App.Div.1920), the Board of Education permitted a community center to use the gymnasium and apparatus in a public school building. Plaintiff was injured when a gymnastics spring board failed. The court ruled that, "[b]y permitting the community center to use the gymnasium and apparatus for community use, there was an invitation to those who availed themselves of the privilege to come upon the premises and use the apparatus." *Id.* 180 N.Y.S. at 797.

In *Stevens v. Central Sch. Dist. No. 1,* 25 A.D.2d 871, 270 N.Y.S.2d 23, 26 (N.Y.App.Div.1966), the issue decided in *Kelly* was raised anew. In *Stevens,* the Sloatsburg Recreation Commission was empowered to provide for, conduct, sponsor, and supervise recreational and athletic activities for the Sloatsburg residents. One such project was "basketball for adults," which was held at the local public school with the express approval and permission of the school district. Plaintiff was injured when he collided with a glass door placed directly behind the basket. The Court affirmed *Kelly* and held that plaintiff was an invitee because the school district "had granted permission to the Sloatsburg Recreation Commission to use the school premises for basketball games sponsored by the Commission and had invited the members of the *public* (including plaintiff) to avail themselves of the building's recreational facilities." *Id.*

The New York Supreme Court, Appellate Division reasoned that, although the sponsoring organizations were separate from the possessor and were given permission to use the school facilities, the facts created a situation in which permission granted to a community organization was essentially a

public invitation. Anyone coming to the public school to participate would reasonably believe that the school desired their presence and had prepared reasonably for their safety.

Another analogous case is *Bersani v. School Dist. of Philadelphia,* 310 Pa.Super. 1, 456 A.2d 151, 154 (1983). Plaintiff Bersani had alleged that he was an invitee while playing softball in a schoolyard after school hours. The softball game was not organized by the school, and each player supplied his own equipment. It was contended that the cause of Bersani's injury was that home plate was placed too close to the schoolyard fence, forcing Bersani, who was the catcher, to crouch dangerously close to the batter. Relying on the *Restatement* 's explication of a public invitee, the court held that evidence that the gates to the schoolyard remained open, pursuant to a longstanding policy of the School District to allow access by children, was sufficient to establish Bersani as an invitee. *Id.*

*Bersani* is also helpful because, like the case *sub judice,* there was evidence of a longstanding policy of public use of the school facilities. In *Bersani,* the gates were open, creating a circumstance where the public could reasonably believe that they were invited to play ball on the field. In the instant case, permission was necessary, but once permission was granted, the school did nothing to obviate the reasonable expectation that the school was holding its doors open to all who availed themselves of the privilege.

Appellant's citations to holdings of other jurisdictions are unpersuasive because these cases hold that invitee status can only be achieved under the mutual benefit doctrine, an analysis eschewed by Maryland Courts. Thus, each case reasons that, because the group using the school premises did not confer a benefit upon the school, they were licensees. *Slovin,* 200 A.2d at 566–67; *Britt,* 638 P.2d at 919–20; *Smith,* 464 P.2d at 576–77; *Gruhalla,* 391 S.W.2d at 592; *Turpin,* 202 S.E.2d at 352; *Light,* 502 N.E.2d at 613.

Appellant argues as a matter of public policy that upholding the trial court's determination of invitee status should be

rejected because it will force schools to shut their doors to community groups. Appellant believes that the duty of care owed to an invitee, is to use reasonable and ordinary care to keep its premises safe for the invitee and to protect the invitee from certain liabilities. In addition, people are only invitees to the extent of their invitation.

## II.  Scope of Invitation

Appellant argues that the trial court erred when it ruled as a matter of law that Tiffany was an invitee at all times while on school premises and declined to instruct the jury on scope of invitation and trespass to chattel.

Although Tiffany was an invitee when she entered the school, the trial judge erred when he ruled as a matter of law that her invitation encompassed her activity at the time of her injury. As the record indicates, Tiffany was either scrimmaging with her mother or climbing the phys-educator when she was injured. A determination that an invitee has acted within the scope of his/her invitation, as a matter of law, is only appropriate where there is no legally sufficient evidence to support the conclusion that the scope of invitation was exceeded. *See Levine v. Miller,* 218 Md. 74, 79–80, 145 A.2d 418 (1958) (upholding trial court's directed verdict because there was no evidence in the record that appellees violated a legal duty owed to appellants); *Pellicot v. Keene,* 181 Md. 135, 139, 28 A.2d 826 (1942) (judgment for plaintiff reversed because there was "no evidence in this case legally sufficient to entitle plaintiff to recover"); *Gordon Sleeprite Corp. v. Waters,* 165 Md. 354, 360, 168 A. 846 (1933) (where the record presented no facts to support the conclusion that plaintiff was invited into the factory building, prayer for a directed verdict should have been granted); *Kirby v. Hylton,* 51 Md.App. 365, 371–72, 443 A.2d 640 (1982) (no evidence to support appellant's contention that invitation to play on open field would include moving large sewer pipes).

In the case *sub judice,* the record supports the conclusion that Tiffany was beyond the scope of her invitation and,

therefore, the trial judge erred in not submitting the scope of invitation instruction to the jury. *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651 (1979) (a party is entitled to have its theory of the case presented to the jury in the form of instructions as long as the theory is a correct exposition of the law and there is evidence to support the theory).

It is a venerable principle that a visitor's legal status is not static but may shift with passage of time, change in location, or change in use. *Levine,* 218 Md. at 79, 145 A.2d 418; *Pellicot,* 181 Md. at 139, 28 A.2d 826; *Gordon Sleeprite,* 165 Md. at 358, 168 A. 846; *Kirby,* 51 Md.App. at 371–72, 443 A.2d 640; *Restatement* § 332 comment 1.

In *Pellicot,* 181 Md. at 136–39, 28 A.2d 826, a young child was injured when he fell through a trap door located behind the sales counter in a retail store. The Court held that the child lost his invitee status when he wandered behind the counter, even though his purpose was allegedly to get at some cakes at the back and top of a display rack. In reaching this conclusion, the Court reasoned that the store was not based on self-service, there was no evidence to show that customers were permitted behind the counter, the separate space behind the counter was necessary for business, and there was no custom of permitting patrons behind the counter. *Id.* at 139, 28 A.2d 826.

In *Gordon,* 165 Md. at 354–58, 168 A. 846, the Court held that a bill collector exceeded the scope of his invitation when, after entering an unattended business office, he journeyed into the adjoining factory area and fell into an uncovered elevator shaft.

In *Kirby,* 51 Md.App. at 367–68, 443 A.2d 640, Timothy, a member of a group of children, was injured when he was struck by a heavy sewer pipe that he and his friends were rolling on open land owned by Hylton, a community developer. The open land housed a water treatment plant and water tanks, which were surrounded by a fence. The pipes were delivered for an upcoming project and were permitted to remain outside the fence for five weeks. Testimony indicated

that the entire open land was typically used by neighborhood children as a play area. It was further evidenced that a plant manager knew that pipes had been moved, warned the children that they could get hurt, and at one time chased the children away from the pipes. Based on these facts, we held that, assuming *arguendo*, Timothy was an invitee on the open field, he exceeded the scope of any invitation when he and his playmates moved the pipe. As a result, Timothy became a trespasser as to the pipes. Implicit in our holding was the notion that an invitation to use land as a play area would not include moving pipes. This would simply be beyond the purpose of the invitation, even though children may be expected to play with nearly anything. *Id.* at 371–72, 443 A.2d 640.

Additional authority is found in *Restatement* § 332 comment l, which provides, in pertinent part, that, "[i]n determining the area included within the invitation, the purpose for which the land is held open, or the particular business purpose for which the invitation is extended, is of great importance." Moreover,

> [t]he mere fact that the possessor knows that invitees in general, or a particular invitee, will be likely to go into parts of the premises to which he is not invited, is not enough in itself to bring such places within the area of invitation, unless the visitor is reasonably led to believe that he is so invited.

> *Id.*

In the case *sub judice*, the record indicated that the Board granted permission to the Recreation Department for the purpose of a "basketball league." Thus, the Board's invitation to the Department of Recreation was limited to the activity of conducting a basketball league; the invitation to Tiffany can be no greater than this. It was established that Tiffany was not a member of the league and that the children her father coached were all six and seven years old. From these facts a reasonable jury could conclude that the purpose of Tiffany's invitation was limited to that of a spectator and that Tiffany exceeded the scope of her invitation when she either scrim-

maged with her mother or climbed on the phys-educator, depending on the determinations made by the fact finder.

A finding that Tiffany exceeded the scope of her invitation, as a matter of law, however, is not appropriate. Although the application provided by the Board to the Department of Recreation contained a space for stating the number of teams and the number of participants in a particular group, no such estimate was made. Moreover, no distinction was drawn by the Board on the application form between players and spectators. Mrs. Cheyne testified that the physical dimensions of the gymnasium provided little area for spectators; they may even have had to enter the basketball court when entering or exiting the gym. Mr. Cheyne testified that he believed he had permission from the Board to invite nonleague member children, essentially spectators, onto the gymnasium floor to scrimmage with their parents and other children. From these facts, a reasonable jury could infer that the Board had delegated such authority to Mr. Cheyne and that Tiffany was therefore an invitee at the time of her injury.

In reaching this conclusion, we have considered the arguments advanced by appellees to support the trial court's determination that Tiffany was an invitee as a matter of law, *i.e.*, (1) Tiffany had permission from her father and mother and was being supervised by her mother, (2) the Department of Recreation encouraged family members to participate, and (3) Tiffany's conduct was foreseeable.

To avoid any confusion, we iterate that Tiffany's initial status as an invitee could only be as an invitee of the Department of Recreation or as a public invitee. As an invitee of the Department of Recreation, her invitation *vis-à-vis* the Board could be no greater than the Department of Recreation's invitation *vis-à-vis* the Board. Thus, Mr. Cheyne, Mrs. Cheyne, or the Department of Recreation did not have the inherent authority to invite Tiffany to act in any manner on the Board's premises. Such authority must be traced back to the invitation created by the possessor—in this case, the Board. Similarly, if Tiffany were a public invitee, her invita-

tion would be limited still to the purpose for which the Board extended an invitation to her.

Finally, appellees' argument that her conduct was foreseeable is misguided. The question is not whether appellant should have foreseen Tiffany's actions. but, rather, whether appellant created a situation that reasonably led Tiffany to believe that her conduct was within the scope of her invitation. This principle is demonstrated in Maryland case law. In *Kirby*, it was not only foreseeable that the children would move the pipes, the landowner's employee saw the children moving a pipe. Nonetheless, we held that an invitation to play on land did not encompass moving sewer pipes. In *Pellicot*, it was arguably foreseeable that a child in a store may wander behind a counter to get at "goodies" behind a display. As well in *Gordon*, it was arguably foreseeable that a bill collector waiting in a vacant office may venture into the manufacturing area to find assistance. In these cases, the Courts have looked not at the foreseeability of the visitor's action but at the reasonable expectation created by the possessor's invitation. As the cases demonstrate, nearly any visitor's action can arguably be foreseeable. The proper question is whether the possessor did anything to lead the visitor reasonably to believe he was invited to act in that way at that time.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**